HOT BLAST COAL COMPANY v. W. B. WILLIAX.

Eastern Section. July 27, 1929.

Petition for Certiorari denied by Supreme Court, December 7, 1929.

Lee, Price, McDermott & Meek, of Knoxville, for plaintiff in error.

Kramer & Kramer, of Maryville, and M. E. Hartman, of Knoxville, for defendant in error.

OWEN, J. Hot Blast Coal Company, defendant below, has appealed from a judgment rendered against it in the circuit court of Knox county for $7500. The plaintiff was awarded $12,000 by the jury, upon motion for a new trial a remittitur of $4500 was ordered by Judge A. C. Grimm, the trial judge.

The defendant has appealed and assigned errors. The plaintiff excepted to the remittitur and has filed the record for error.

The plaintiff, twenty-five years of age, in the Fall of 1927 was employed by Billiter & Oliver Brothers, a partnership engaged in paving a state highway in Anderson county and while so employed the plaintiff met with an accident resulting in the loss of his right leg just below the knee. The plaintiff alleged that his injuries were the result of the negligent acts of the servant and employee of the defendant.

The defendant filed a plea of not guilty.

There was a motion for a directed verdict at the conclusion of plaintiff's proof and it was also renewed at the conclusion of all the evidence.

Defendant's motion for a new trial being overruled it excepted, prayed and perfected an appeal and has assigned six errors.

The first error complains of the court in overruling the defendant's motion made at the conclusion of plaintiff's testimony.

The second error is, that the court erred in not granting a motion for a directed verdict at the conclusion of all the proof.

The third error is, that there is no evidence to sustain the verdict and judgment of the lower court.

The other three assignments are as follows:

IV. The court erred in instructing the jury as follows:

"If the defendant loaned the operator of the truck in question to said Billiter or Oliver or Billiter & Oliver Brothers for the time being, and resigned only partial control of said operator to said Billiter & Oliver or Billiter & Oliver Brothers during such period, then the operator of the truck in question continued to be the agent, servant, or employee of the defendant."

V. The court erred in refusing to instruct the jury as requested by the defendant at the conclusion of the trial, as follows:

"1st.—The law recognizes that a servant in the general service of one master may be transferred with his consent under contract or otherwise to the service of another, so as to become for the time the latter's servant with all the legal consequence of that relationship.

"To determine whether such servant in the general service of one has been transferred to the service of another, so as to become in performing such work the servant of such special master—and the general master would not be answerable in damages for injuries caused to persons or property by such servant.

"The fact that the general master pays the wages of such servant, and can alone discharge him is not the controlling factor in determining whose servant he was. To determine whether a servant is performing service for one master or

another—you must determine whose, for the time being, the servant of such other person was. You look to the particular matter in which he was employed, and determine whether he was doing the work of the general master, or was he engaged in doing the work of another over whom the general master has no control. If he was performing a special service for another who with reference to the details of such work, such other person had full control, then such servant, became whose to the work being performed, a question which is usually answered by ascertaining who was the power to control and direct the servant in the performance of his work.

"2nd.—The fact that a general master details a mechanic to make any necessary repairs to the truck of such general master, or to in general look after and care for the trucks of such general master, would not, of itself, prevent such mechanic and the drivers of such trucks from being, at the same time, the servants of another, if such other person had and exercised control over said mechanic and truck drivers with respect to the method and details of doing the work of such other person."

VI. The court erred in refusing to grant defendant's motion for a new trial because the verdict was so excessive as to show passion, prejudice and caprice on the part of the jury.

The first assignment is overruled. The defendant did not elect to stand upon this motion and when it introduced proof, it waived its right to have the case considered upon plaintiff's proof alone. Therefore, this court upon appeal will look to all the evidence to see if there is any material evidence to sustain the verdict or any material evidence to be submitted to the jury. Tennessee Central I. C. Railroad Co. v. Zearing, 2 Tenn. App., 451; Coal Company v. Bennett, 8 Hig., 310; Smith v. Gerber, 150 Tenn., 255.

We will dispose of the second and third assignments together as they raise the same question.

At the time of the accident the defendant was struck by a truck owned by the defendant, which truck had been hired to Billiter & Oliver Brothers by the defendant, and the question upon this appeal is whether the driver of the defendant's truck at the time of the accident was the servant of the defendant or the servant of Billiter & Oliver Brothers.

Plaintiff's duty was to operate a small roller in front of a concrete mixer. Billiter & Oliver Brothers employed numerous men and also numerous trucks for hauling rock, sand and cement. They hired from the defendant fourteen trucks, the defendant furnished the trucks and the driver for each truck and hauled cement, rock and gravel under the direction of the foreman of the road con-

tractors. The road contractors paid the defendant by the load, the price varying according to the distance hauled. The defendant also sent from its place of business in Knoxville to Anderson County, a mechanic by the name of Light, who repaired defendant's trucks and had supervision over the defendant's drivers. This roller driven by the plaintiff was called a packing roller, it had a blade on it and was used to proceed along the highway in front of the concrete mixer and pack down the road bed between the concrete forms preparatory to putting down the concrete. The space between the forms was about 18 feet. It took about 20 or 25 men to operate the concrete mixer. The mixer was stationed in the middle of the highway. At the time the plaintiff was injured he was standing by his roller on the right hand side of the road about 25 yards from the concrete mixer. There was about 10 feet between where the plaintiff and his roller were standing and the edge of the highway. The trucks passed in and out and along this 10 feet of space, each truck bringing in a load of cement, sand and gravel. The plaintiff was pouring some water in the radiator of his roller at the time he was struck by defendant's truck as the truck loaded approached the concrete mixer. When it got within 150 feet of the mixer it would turn around and back into the mixer. The plaintiff stated that he had put some water into the radiator of his roller and was putting the cap back on when the truck hit him, he was facing the roller at the time. The plaintiff was standing either astraddle the grader blade or with one foot on the blade at the time he was struck. The truck was backing in when it hit plaintiff, striking him across the shoulder knocking him against the roller when he fell and his right leg fell in front of the grader blade on the roller and the truck wheel caught plaintiff's leg against the grader blade. The concrete mixer at the time was running, the motor to the roller was running, the driver of the truck gave no warning to the plaintiff as he backed the truck in. Two trucks had backed in while this roller was standing in its position where plaintiff was hurt just prior to the backing in of the one that caused the injury.

We find that there was plenty of space in which to have backed this truck between where the roller was standing and the concrete form, there being a space of 10 feet or more, and that the driver of the truck was negligent in striking the plaintiff.

As to whether or not Homer Johnson, the driver of the truck that struck plaintiff, was the servant and under the control of Billiter & Oliver Brothers, the road contractors, or the Hot Blast Coal Company, the defendant. The following facts appear from the record:

The defendant owned a number of trucks which it hired with its drivers to the road contractors. There was no formal contract between the road contractors and the defendant. Mr. Bland, the president of the defendant company, testified that there was no contract between his company and the road contractors but an agreement or understanding by which arrangement the defendant was to be paid a certain price per batch for the work done by the trucks and drivers. There were no details, whatever, concerning the handling of the trucks and drivers. At first the defendant sent fourteen of its trucks and drivers to work for the road contractors. The defendant began to withdraw its trucks presumably as its business in Knoxville demanded until only three of its trucks were left at work on the road contract at the time of the accident. The defendant hired the drivers of its trucks. For each load delivered the foreman or some employee of the road contractors gave the truck driver a ticket, this ticket was delivered by the truck driver to Charlie Light, the defendant's foreman. Mr. Light kept the time of the drivers and paid the drivers by the hour. Mr. Bland instructed his foreman, Mr. Light, to discharge the drivers of the trucks if they didn't obey Light, the foreman, or if the contractors complained of the drivers. Light was told that if the drivers mistreated the trucks or abused them Light was to fire or discharge the drivers. Light testified that he discharged two drivers while on the job because they mistreated the trucks. Light also told one driver he would have to leave because the driver had an argument and had cursed the foreman of the road contractors. He hired two drivers when the road contractors brought the drivers to Light and said, ''here are two men who will make good drivers.'' Thereupon Light employed them as drivers.

Upon one occasion when Light was away from the job, the road contractors put a driver on one of the trucks and reported to Light what they had done, as soon as he returned he acquiesced in this. Light testified that he hired Homer Johnson, the driver of the truck which caused the accident, paid him thirty cents per hour and Johnson had been working two or three months. Light instructed the drivers that they were to haul rock, sand and cement from the station where it was unloaded to the concrete mixer. Light repaired all of the trucks of the defendant. The defendant furnished all the gasoline, oil and other necessary supplies for its trucks. Mr. Bland would take the money from Knoxville to Clinton and pay off the drivers some times and at other times he would send the money to foreman, Light, or Mr. Oliver, the contractor, who would pay the drivers for the defendant.

We are of the opinion that the defendant had full control of the driver of the truck that injured the plaintiff. "In order to escape responsibility for the negligence of his servant on the theory that the servant has been loaned, the original master must resign full control of the servant for the time being. It is not sufficient that the servant is partially under the control of a third person. 26 Cyc., 1522; 18 R. C. L., 784." The control of this servant, Homer Johnson, was but partially transferred by the defendant. The road contractors had no right to discharge the driver or use his services generally in connection with the road contract. Johnson the driver's work was specifically driving a truck. The defendant only, authorized its servant, Homer Johnson, to do a particular thing for the road contractors (independent contractor) and the defendant did not give up its authority over its servant. The principle of the law in this case, we are of the opinion, is controlled by the following authorities: Chamberlain v. Lee, 148 Tenn., 637; Dedman v. Dedman, 155 Tenn., 241.

The defendant relies upon the principle announced in Powell v. Construction Co., 88 Tenn., 692; Sanford v. Keef, 140 Tenn., 368 and Finley v. Keisling, 151 Tenn., 465. An examination of those cases, in our opinion, distinguishes them from the instant case for the reason that the defendant did not resign full control of its servant for the time being to the road contractors. It is not sufficient that the defendant's servant was partially under the control of the road contractors.

Where a truck has been leased with the services of a driver in the general employment of the owner, at a weekly rental, under an agreement by which the owner furnishes the driver and supplies all oil, gasoline, tires, and other things necessary to keep the truck in shape, the driver remains the servant of the owner, though the lessee determines when and where the truck is to go and the load it is to carry, but has nothing to do with the mechanical operation of the truck, and the right to discharge the driver and select another to take his place is in the owner; and the owner alone will be answerable for the negligence of the driver in the course of such hiring, unless he has in some manner assumed control or interfered with the manner in which the truck is being operated. Connor v. McCandless (1925), 84 Pa. Sup. Ct., 307; 42 A. L. R., 1433.

And so if a truck owner makes a verbal agreement to furnish another trucks with chauffeurs at a fixed rate per day to be used in delivering goods, but retains control of the drivers, their selection and pay, the right to discharge them and the exclusive management, control, and operation of the truck; and if the hirer can use the drivers furnished only to manage and operate the trucks

in delivering and carting goods to and from the places designated, the truck drivers remain the servants of the owner in doing the work contracted for, and do not become the servants of the lessee; and the owner alone will be liable for their negligence. Spellacy v. Hagarty Motor Corp. (1920), 182 N. Y. Supp., 355; 42 A. L. R., 1433; Olsen v. Veness, 105 Wash., 599, 178 Pac., 822. The controlling facts in these cases, and in all others which support the rule, is that the servant must be in the exclusive control of the one to whom he is loaned, and if so, such servant becomes pro hac vice the servant of him to whom the exclusive control so passes, and not otherwise.

The proof shows without contradiction that the Hot Blast Coal Company retained the right to fix the compensation of the drivers, to discharge the drivers, to require the drivers to help the machinist in the repair of the trucks, and to recall the trucks and drivers at will from Billiter & Oliver Brothers. The company also gave these drivers instructions about the way they should drive the trucks, warn pedestrians and others upon the road.

Can it then be said that the Hot Blast Coal Company surrendered exclusive control of these drivers to Billiter & Oliver Brothers? We do not think so.

In 39 C. J., page 1275, it is said:

"To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary cooperation where the work furnished is part of a larger operation. A servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out the work to the servant, or gives him signals calling the service into activity, or gives him directions as to the details of the work and the manner of doing it."

In Berry on Automobiles, Fourth Edition, Section 1227, it is said:

"Where the owner of trucks furnished them with drivers to another, at a stipulated price per day, retaining control over the drivers, their selection and pay, and the right to discharge them, the exclusive care, management, and operation of the trucks, and the drivers could be used for no other purpose than to truck the particular goods to and from designated places, such owner was held to be responsible for negligence of such drivers."

Standard Oil Company v. Anderson, 212 U. S., 215, 53 L. Ed., 480; Hull v. Philadelphia & R. R. Co., 252 U. S., 475, 64 L. Ed. 670.

It results that the second and third assignments of error are overruled. It is next insisted by assignments four and five that the court erred in instructing the jury and that the court refused to instruct the jury as requested by the defendant. Neither one of these assignments complies with the rules of this court. We are not referred to the page of the transcript either in the assignments of error or in the brief in support thereof where this excerpt from the court's charge complained of can be found or where the request submitted can be found. The rules of this court and of the Supreme Court require all assignments of error based upon errors complained of as to the court's charge should cite the page of the transcript, where the excerpt complained of can be found. However, for our satisfaction we have read the charge of the court and we find no reversible error therein and under Chapter 32 of the Acts of 1911, it is our duty to affirm a cause unless the party complaining as to the charge of the court has been manifestly prejudiced thereby. These two assignments are overruled.

As to the last assignment of error on the verdict being excessive, it appears that the plaintiff, at the time of the injury, was working regularly earning $25 per week. He lost his right leg just below the knee. The injuries complained of were very painful, he was confined in the hospital for thirty-three days, his doctors' bills and hospital bills amounted to $336.23. He suffered for many weeks after he left the hospital. He will be unable to follow his previous occupation. He is a young man, 25 years of age, with a very limited education. We are of the opinion that the judgment of $7500 is not excessive. It results that all the assignments of error on behalf of the defendant are overruled and disallowed.

We will next consider the assignment of error on behalf of the plaintiff which complains of the remittitur suggested by the trial judge who reduced the verdict from $12,000 to $7500. The trial judge was not satisfied with the verdict as to its amount, he would not approve a verdict for more than $7500. There is no fixed rule whereby damages for personal injuries can be mathematically calculated. In the instant case the trial judge saw the plaintiff at the time of the trial, saw his injuries, also saw and heard all the witnesses who testified. As the thirteenth juror, the trial judge's conscience would not allow him to approve of a greater verdict than $7500. In ordering the remittitur, we are of the opinion that the trial judge did not abuse his power or his right and that the trial judge did not commit reversible error thereby. We approve of the trial judge's actions in directing that a remittitur be entered in this cause under all the facts and circumstances pertaining to the case.

It results that the plaintiff's assignment of error is overruled. The plaintiff will recover of the defendant $7500 with interest thereon from the date of the judgment rendered in the Circuit Court, and all the costs of the cause for which execution will issue. Execution will issue against the defendant and its surety on the appeal bond for the costs of the appeal.

Heiskell and Senter, JJ., concur.