Nola CARPENTER, Individually, as Administratrix of the Estate of Donald Ray Carpenter, Deceased, and as parent and next friend of Carlas Reneah Carpenter, Regena Lee Carpenter and Donna Ann Carpenter, etc., Plaintiffs-Appellees,

v.

HOOKER CHEMICAL & PLASTICS CORP. et al., Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

April 1, 1977.

Sanders & Steenbergen, Columbia, for plaintiffs-appellees.

Donald P. Paul, H. T. Finley, Nashville, for defendants-appellants.

## OPINION

TODD, Judge.

The defendants, Hooker Chemical & Plastics Corp. and Alfred Ingram, have been allowed and have perfected an interlocutory appeal from an order of the Trial Judge which overruled their motion for summary judgment and dismissal.

Plaintiffs have sued for the wrongful death of Donald Ray Carpenter, an employee of Maury Steel, Inc., whose death was allegedly the result of injuries received on the industrial premises of the defendant Hooker while under the supervision of the defendant Ingram, an employee of Hooker.

Defendants insist that plaintiff should not prevail in this common law action because the sole remedy against defendants for the death of deceased is a suit under Workmen's Compensation Law because, (1) deceased was the employee of a subcontractor under defendant as a general contractor, as provided by T.C.A. § 50–915; or (2) deceased was a "loaned employee" and therefore was an employee of defendant, Hooker.

It is uncontroverted that deceased was employed and paid by Maury Steel, Inc., doing work on the premises of defendant, Hooker, under a contract between Maury Steel and Hooker.

On August 15, 1974, Hooker issued to Maury Steel its purchase order No. 41–4742 which reads in pertinent part as follows:

"Furnish eight (8) Iron Workers for two (2) 12 hour shifts from 8–13–74 until notification.

CONFIRMING . . .

FORM SAF–101 FORMS A PART OF THIS CONTRACT . . ."

The uncontroverted evidence shows that the contract required Maury Steel, Inc. to furnish no materials, machinery, equipment or supplies, nor supervision, and that, at the time of his injury, deceased was working under the supervision of the defendant, Ingram, an employee of Hooker; that Hooker is required to rebuild its reduction furnaces once each three years; that the work is not done entirely by Hooker, but is done partly by Hooker employees and partly by employees of outside contractors; that Hooker is not in the business of rebuilding reduction furnaces except for itself; that deceased was one of sixteen iron workers furnished by Maury for cutting and removing certain pipes in the dismantling of the furnace; that a Maury Steel supervisor was present on the day shift, but no Maury Steel supervisor was present during the night shift when deceased was injured; that deceased was told by defendant, Ingram, which pipes to cut; and that, while cutting one of said pipes, deceased was injured.

First, it is insisted by defendants that Maury Steel was a subcontractor of Hooker as general contractor, so that Hooker was liable for the injury of deceased under the Workmen's Compensation Law (T.C.A. § 50–915), but not otherwise (T.C.A. § 50–908).

In *Clendening v. London Assurance Company,* 206 Tenn. 601, 336 S.W.2d 535; (1960), a house builder took title to property in his own name and constructed houses thereon for resale, contracting with various

subcontractors for parts of the construction. Plaintiff, who contracted to lay bricks on a per unit basis, was injured on the job. The Supreme Court held the compensation insuror of the builder liable for benefits, stating that the owner of the premises was, nevertheless, a general contractor under the Workmen's Compensation Law and, as such, liable for benefits to any person employed on the job.

To the same effect is *Billings v. Dugger,* 50 Tenn.App. 403, 362 S.W.2d 49 (1962).

In *Clower v. Memphis Light, Gas & Water Div.,* 54 Tenn.App. 716, 394 S.W.2d 718 (1965), plaintiff was employed by Tri State Armature and Electrical Works, but was injured while working on the premises of Memphis Light, Gas and Water Div. pursuant to a contract of Tri State to furnish workmen to repair fire damage under the direction and supervision of Memphis Light. Workmen's Compensation benefits were paid by the insurer of Tri State, and Clower sued Memphis Light in a common law action for tort. This Court affirmed a directed verdict for the defendant, holding that Memphis Light was not a "third party" against whom an action is permitted by § 50–914, T.C.A.

It appears that the only difference between *Clower* and the present case is that in *Clower* there was a "one-time" repair of fire damage, whereas in the present case, there was a recurrent rebuilding of fire deterioration of a furnace. The difference is inconsequential for purposes of determining the rights and liabilities of the parties. Actually, the facts of the present case are more convincing than *Clower* because the rebuilding of its furnaces was a part of the business of the defendant, Hooker.

In *Winchester v. Seay,* 219 Tenn. 321, 409 S.W.2d 378 (1966), plaintiff was a hotel employee, but was requested by his employer to perform a minor maintenance chore for the owner of a restaurant, during which work he was injured. The Supreme Court allowed a workmen's compensation claim against the restaurant holding,

". . . such ancillary activities as maintenance and repair are now generally deemed to be within the course of the employer's usual business."

In *Winchester,* the Supreme Court also quoted with approval from Section 48, Larson on Compensation in regard to the workmen's compensation liabilities of general and special employers of loaned employees.

Plaintiff urges that this case is controlled by *Hendrix v. Ray-Ser Dyeing Company,* 224 Tenn. 690, 462 S.W.2d 483 (1970) wherein the Supreme Court denied compensation benefits to a painter who contracted with defendant to paint its smokestack according to plaintiff's own method for a stipulated price without any assistance or participation by any employees of defendant. The distinctions are obvious. In the present case, the employees of Maury Steel were used for an indefinite time to perform whatever details were assigned to them by Hooker, and employees of Hooker were engaged in the same reconstruction project.

Plaintiff also relies upon a district court decision, *Chappell v. Olin-Mathieson Chemical Corp.,* 305 F.Supp. 544 (1969). This Court does not ordinarily accord appellate status and consideration to the opinions of trial judges. Moreover, this Court does not agree entirely with the reasoning and pronouncements of *Chappel v. Olin* which relies principally upon *Siskin v. Johnson,* 151 Tenn. 93, 268 S.W. 630 (1924) wherein the workman was not working on the premises of the defendant and under the control of the defendant, as in the present case. In *Chappel v. Olin* there was a complete assignment of work to be performed by the electrical contractor by his own methods and means, which places *Olin* in the classification with *Hendrix v. Ray-Ser* which has already been differentiated.

■ Defendants' first insistence is sustained. Where a business enterprise undertakes to act as its own general contractor and contracts directly with subcontractors for various phases of construction on its own premises, such business enterprise is subject to the liability imposed by the Workmen's Compensation Law upon general contractors and, consequently, is entitled to the immunities conferred by the same law.

The uncontroverted facts therefore require dismissal of this common law action.

Defendant's second contention is also correct. The uncontroverted facts establish a situation of "loaned servant" whereby the defendant was likewise subject to the liability and entitled to the immunity provided by the Workmen's Compensation Law. *Winchester v. Seay,* supra.

Plaintiffs resist adoption of the "loaned servant theory," insisting that the status of loaned servant is a question of fact for the jury. This is so only when the evidence is disputed or reasonable minds might draw differing inferences of fact from the undisputed evidence. Such is not true in the present case. All of the evidence shows that the deceased employee was a loaned servant under the criteria set out in *Winchester v. Seay,* supra.

Plaintiffs rely upon *Dedman v. Dedman,* 155 Tenn. 241, 291 S.W. 449 (1926); but that case involved a borrowed chauffeur driven automobile and common law liability of the master under the rule of respondeat superior. In plaintiffs' authority, *Chamberlain v. Lee,* 148 Tenn. 637, 257 S.W. 415 (1923), an elevator repairman sued a building owner for injuries sustained by the operation of an elevator by the employee of the building owner acting on instructions of the repairman. So also in *Gaston v. Sharpe,* 179 Tenn. 609, 168 S.W.2d 784 (1942), cited by plaintiffs, wherein plaintiff was injured by the operation of a dragline in control of an employee of the owner of the machine acting under instructions of the city who had rented the dragline. So also in *Hot Blast Coal Co. v. Williax,* 10 Tenn.App. 226 (1929) involving the operation of a truck. *Owen v. St. Louis Spraying Co.,* 175 Tenn. 543, 136 S.W.2d 498 (1940) involved the furnishing of an instructor to instruct employees of defendant, hence he could not have been under the control of defendant or its employees. He was in control. Plaintiffs also rely upon the Trial Court decision in *Latham v. Technar, Inc.,* D.C., 390 F.Supp. 1031 (1974), however this involved a transfer from one manufacturing plant to a subsidiary and is distinguishable from the present case.

Plaintiffs undertake to rely upon a statement in an affidavit of David McClain. Plaintiffs' brief makes no citation to the record as required by the Rules of this Court, and diligent search of the record fails to disclose such an affidavit or reference thereto. The motion for summary judgment lists the evidence upon which it is based and such affidavit is not so listed. The record contains no response to the motion for summary judgment.

According to plaintiffs' brief, the McClain affidavit would show that deceased was hired by Maury Steel, could have been fired by Maury Steel, was paid by Maury Steel and his questions about his work would have been answered by Maury Steel. This evidence, if shown, would not change the undisputed fact that deceased was working as a part of an eight-man crew which had no supervision or direction on the job except the defendant, Ingram, a supervisory employee of Hooker, who directed deceased to cut the particular pipe which produced the injury of deceased. No Maury Steel foreman or supervisor was on the premises.

Plaintiffs insist the *right* of control should be a jury question, but relies upon the written contract for evidence of right of control. Generally, the interpretation of a written instrument is a question of law for the court. *Provident Washington Insurance Company v. Reese,* 213 Tenn. 355, 373 S.W.2d 613 (1963) and authorities cited therein.

Even though the printed conditions on the reverse side of the order to Maury Steel referred to diligence and care in performing work and the furnishing of materials, equipment and supplies, such printed provisions are superseded by the typewritten items on the face of the order as follows:

"Furnish eight (8) Iron Workers for two (2) 12 hour shifts from 8–13–74 until notification."

It is unthinkable that the contract contemplated more than furnishing the designated number of workmen to do whatever was desired by Hooker for whatever period of days Hooker might desire. This is a classic example of loaned servants. More-

over, the uncontradicted evidence supports this interpretation. The deposition of Mr. Ingram states that Maury Steel furnished no machinery, equipment, or supplies. No supervision was furnished on the night shift during which deceased was injured. At the time of the injury, Hooker employees and Maury Steel employees were working together under the immediate supervision of Ingram.

This Court is satisfied with the correctness of the conclusion that deceased was a "loaned servant."

The previously stated rulings in favor of defendant, Hooker, are also available to the other defendant, Alfred Ingram, Hooker's supervisory employee. In *Majors v. Moneymaker,* 196 Tenn. 698, 270 S.W.2d 328 (1954) it was held that the immunity from common law liability applies to both employer and fellow employees. There appears to be no specific authority exempting fellow employees under the peculiar circumstances of this case. However, this Court is of the opinion that, once Workmen's Compensation liability is fixed upon an employer, the immunity from common law liability protects such employer and employees of such employer in the same manner as in the uncomplicated case involving only one employer and his direct employees.

The disposition of this appeal does not deny all relief to plaintiffs. The record does not show whether Maury Steel carried Workmen's Compensation insurance, but, from the employment of sixteen men, it must be presumed that such insurance was in force. It is shown that Hooker had Workmen's Compensation in force. There is no suggestion that liability has been denied by either concern or its insurer under the Workmen's Compensation Law. There is, therefore, no reason to fear that the dependents of deceased may have been or may be denied their rightful benefits under the Workmen's Compensation Law. Common sense and common justice strongly support the liability of Hooker under the Workmen's Compensation Law and the immunity of Hooker under the common law.

■ The purpose of the Workmen's Compensation Law is to assure workmen and their dependents of some compensation for injuries on the job. A workman, such as deceased, or his dependents, should not be deprived of benefits for injuries sustained while performing work on the premises of a large industry merely because he is on the payroll of a smaller concern which has loaned his services to the large industry. This is especially true where all of the conditions and hazards of work are determined and controlled by the larger industry. If Maury Steel had not employed sufficient workers to be subject to the Workmen's Compensation Law, deceased, as a member of a large crew working under Hooker's direction was entitled to protection. The ruling of this Court assures this protection.

On the other hand, being subject to the liabilities of the Workmen's Compensation Law, and having made adequate provision for discharge of such liabilities, Hooker and its employee, Ingram, are entitled to have their liability limited as provided in said law.

The judgment of the Trial Court overruling defendants' motion for summary judgment is reversed. Summary judgment is granted in favor of both defendants and plaintiffs' suit is dismissed. All costs, including costs of this appeal, are taxed against plaintiff.

Reversed and Dismissed.

SHRIVER, P. J., and DROWOTA, J., concur.