**Milford Wendell POSEY, Jr., et al.,
Plaintiffs-Appellants,**

v.

**UNION CARBIDE CORPORATION,
Defendant-Appellee.**

No. 81–5366.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1982.

Decided April 21, 1983.

Larry S. Vines, Lloyd Gathings (argued), Birmingham, Ala., for plaintiffs-appellants.

Hugh T. Shelton, Jr. (argued), Columbia, Tenn., for defendant-appellee.

Before EDWARDS, Chief Circuit Judge, KEITH, Circuit Judge, and HOFFMAN,* Senior District Judge.

* Honorable Walter E. Hoffman, Senior Judge, U.S. District Court for the Eastern District of Virginia, sitting by designation.

GEORGE CLIFTON EDWARDS, Jr., Chief Circuit Judge.

This is an appeal from the District Court's, 510 F.Supp. 1143, grant of summary judgment in a diversity action brought by four minor children who are survivors of the deceased, Milford Posey. Posey was killed when he fell through a roof he was engaged in helping to erect on premises owned by defendant Union Carbide Corporation. Plaintiffs' brief recites the applicable facts which we treat as undisputed in this appeal from summary judgment:

> Defendant, Union Carbide Corporation, contracted with several contractors to construct a graphite furnace plant on its own premises at Columbia, Maury County, Tennessee. Union Carbide appointed project engineers to see that the construction project was properly performed and the work orderly and expeditiously prosecuted according to the contract. However, neither Union Carbide nor its project engineers exercised absolute control over all phases of the method and performance of the work. * * * Defendant, Union Carbide, contracted with Maury Steel, Inc., to perform the structural steel erection and roofing on Union Carbide's premises. Union Carbide, according to contract, approved all structural drawings before construction began, including those concerning the roof. Union Carbide had knowledge of the possibility that the perlins (roof supporters) were spaced too far apart according to required safety standards, but approved the plans nonetheless.

On July 29, 1975, Milford Wendell Posey, deceased, was employed by Maury Steel, Inc., in the construction of a building for and at the premises of the defendant, Union Carbide Corporation. The decedent fell to his death when a section of corrugated transite material, being used for roofing on the building, collapsed and

gave way, causing him to fall to a concrete floor approximately thirty-seven (37) feet below.

Plaintiffs' brief describes their action in negligence terms as follows:

The basis for plaintiffs' action against the defendant, Union Carbide Corporation, is the plaintiffs' averment that said defendant, as owner of the project and project site and by retention of supervisory authority, owed certain duties to Milford Wendell Posey, Jr., deceased, including the duty to provide proper, safe and adequate design specifications with regard to the material used to support the roof of the building where plaintiffs' decedent was working and the nondelegable duty to assure that reasonably safe equipment and methods were used in the performance of such work.

The District Judge, however, granted summary judgment on defendant Union Carbide's motion on the following construction of Tennessee state law which he found to govern this diversity case under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938):

Plaintiff's decedent died as a result of injuries incurred when he fell through the roof of Union Carbide's new graphite furnace plant. Although Union Carbide argues that it had supervisory control over the project as a whole, it concedes that it did not undertake direct supervisory control of the work performed by plaintiff's decedent. For purposes of this motion the Court assumes that Union Carbide was owner, undertook to hire Maury Steel and the other contractors, and had general control over the project. Because plaintiff's decedent has recovered worker's compensation from Maury Steel's insuror, a grant of summary judgment for Union Carbide would preclude any recovery against Union Carbide.

Workers' compensation laws were enacted to compensate employees for loss of earning capacity sustained in the course of their employment. *W.S. Dickey Mfg. Co. v. Moore,* 208 Tenn. 576, 347 S.W.2d 493 (1961); *Mathis v. J.L. Forrest & Sons,*

188 Tenn. 128, 216 S.W.2d 967 (1949). To recover compensation, the employee need not prove negligence, and he is not subject to the defenses of assumption of risk, the fellow servant rule, and contributory negligence. Tenn.Code Ann. § 50–911. Although the employer is required to compensate employees for injuries that may not be the result of the employer's negligence, he is protected from damage verdicts for tortious injury. *Id.* § 50–908.

Tort recovery is permitted against third parties. The policy for allowing third-party actions is fairly simple: since the third party could not have been liable for worker's compensation, he should be prepared to make the injured person whole under normal tort principles. Injured persons should not be deprived of access to the courts for redress without reason. Employers under worker's compensation acts stand ready to pay worker's compensation. An employee who recovers worker's compensation may not generally pursue a tort remedy against his employer because that protection is the quid pro quo received by the employer for providing worker's compensation coverage.

Tennessee Code Annotated section 50–915 extends the duties and immunities of an employer to entities other than an employee's immediate employer.

A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.

. . . .

This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

When taken together with Tenn.Code Ann. § 50–908, which provides for worker's compensation as the exclusive reme-

835 of 14 et al.

dy, tort recovery is barred against a principal contractor.

Section 50–915 creates "statutory employers" that will be liable for worker's compensation in case recovery is unavailable against the employee's immediate employer. Similar "statutory employer" statutes are on the books in over forty states. *See* 2A A. Larsen, The Law of Workmen's Compensation § 72.31, at 14–57 (1980). The purpose of section 50–195 and similar statutes is to protect employees from irresponsible subcontractors. The principal or general contractor will be responsible for an injured employee's worker's compensation if it has failed to hire reliable, insured subcontractors. The object of the statute is to give the general contractor an incentive to require subcontractors to carry insurance." *Id.*

We turn now to interpretation of the previously cited Tennessee case law on that subject. Plaintiffs-Appellants contend that this court has authoritatively interpreted Section 50–915 of Tennessee Code Annotated favorably to their claim for tort liability against Defendant Union Carbide. They cite and rely upon *Womble v. J.C. Penney Co.,* 431 F.2d 985 (6th Cir.1970), where a panel of this court said:

The District Court found that appellant as owner of the property was not a principal contractor since that term did not ordinarily refer to the owners of the premises who have contracted with other firms to perform work on the premises which was not a part of the owner's business. We agree with the District Court's findings and hold that Robertson & Sons, and not the appellant, was the principal contractor, and that therefore appellee was not barred from filing his negligence action against appellant, as a third person under T.C.A. § 50–914, even though he recovered workmen's compensation. The term "principal contractor" is not defined in the Tennessee Code, but the courts have dealt with the question in situations similar to the present.

In *Siskin v. Johnson,* 151 Tenn. 93, 268 S.W. 630 (1925), later followed in *Odom v. Sandford & Treadway,* 156 Tenn. 202, 299 S.W. 1045 (1927) and *International Harvester Company v. Sartain,* 32 Tenn.App. 425, 222 S.W.2d 854 (1948), where R.H. Siskin & Sons contracted with one H.C. Carter to unload some railroad cars, and Johnson, an employee of Carter, was injured while unloading the cars, the Court held that the defendants were not principal contractors since they had not contracted or undertaken to execute work for another, but had only employed Carter as an independent contractor to perform certain work for them. Similarly, J.C. Penney had not contracted work for another, and as owner of the store where appellee was injured and by contracting the painting job to Robertson & Sons, it was not a principal contractor under T.C.A. § 50–915. See also, *Chappel v. Olin-Mathieson Chemical Corporation,* 305 F.Supp. 544 (E.D.Tenn.1969); *Jones v. City of Dyersburg,* [59 Tenn.App. 354] 440 S.W.2d 809 (Ct.App.Tenn.1967).

*Id.* at 987.

In *Womble,* however, this court found that there was a "principal contractor" namely Robertson & Sons and that the owner J.C. Penney was not a "principal contractor" under the statute. It followed from that holding that J.C. Penney could neither be held liable for workmen's compensation, if the direct employer was uncollectible, nor be held exempt from a damage action for its own negligence, if such could be established.

On the other hand, in our instant case, we find no facts pled which serve to contradict Judge Wiseman's conclusion that "Union Carbide was a principal contractor for purpose of section 50–195." In fact, Union Carbide's use of four of its own engineers to supervise discrete construction tasks performed by 12 contractors appears to bring the firm within the definition of "statutory employer," according to the test proposed by Professor Larson for the determination of that status. *See* Larson, *Workmen's Compensation Law* § 49.12 (1980). That renowned expert in the field of Worker's Compensation has observed: as a general

rule of thumb "that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees," *id.* He continues by suggesting that:

> The activities which produce most of the close cases are ... peripheral and auxiliary operations such as maintenance, construction, and delivery.... [T]he test must be relative, not absolute, since a job of construction or repair which would be a nonrecurring and extraordinary undertaking for a small business might well for a large plant be routine activity which it normally expects to cope with through its own employed staff. Ordinarily construction work, ... would be considered outside the trade or business of a manufacturing or mercantile establishment. But if the defendant is a business which by its size and nature is accustomed to carrying on a more or less ongoing program of construction, replacement, and maintenance, perhaps even having a "construction division," or which can be shown to have handled its own construction in the past, a job of construction delegated to a contractor will be brought within the statute.

*Id.* Thus, while Union Carbide's use of its own engineering staff argues strongly for affixing the status "statutory employer" to its activities, J.C. Penney's casual hiring of a painting contractor in *Womble* supports, with comparable clarity, the conclusion that J.C. Penney's was not a principal contractor of the injured painter in that case. *Cf. Carpenter v. Hooker Chemical & Plastics Corp.,* 553 S.W.2d 356 (Tenn.App.1977) (Hooker found to be a principal contractor of employee of structural steel contractor where: 1) injured structural steel employee worked along side of Hooker employees; 2) Hooker supervised structural steel employees in a manner comparable to its own employees; and 3) the project undertaken— the rebuilding of a reduction furnace—recurred every three years.)

We also find much force to Judge Wiseman's reliance upon *Carpenter.* This case incidentally, was decided seven years after this court's *Womble* decision with certiorari being denied by the Tennessee Supreme Court on December 23, 1981.

The Tennessee Court of Appeals' opinion in *Carpenter* stated:

> Where a business enterprise undertakes to act as its own general contractor and contracts directly with subcontractors for various phases of construction on its own premises, such business enterprise is subject to the liability imposed by the Workmen's Compensation Law upon general contractors and, consequently is entitled to the immunities conferred by the same law.

553 S.W.2d at 358, *quoted with approval in, Fugunt v. Tennessee Valley Authority,* 545 F.Supp. 977, 980 (E.D.Tenn.1982).

The Tennessee Court of Appeals in *Carpenter* further explained its reasoning:

> Common sense and common justice strongly support the liability of Hooker under the Workmen's Compensation Law and the immunity of Hooker under the common law.
>
> The purpose of the Workmen's Compensation Law is to assure workmen and their dependents of some compensation for injuries on the job. A workman, such as deceased, or his dependents, should not be deprived of benefits for injuries sustained while performing work on the premises of a large industry merely because he is on the payroll of a smaller concern which has loaned his services to the large industry. This is especially true where all of the conditions and hazards of work are determined and controlled by the larger industry. If Maury Steel had not employed sufficient workers to be subject to the Workmen's Compensation Law, deceased, as a member of a large crew working under Hooker's direction was entitled to protection. The ruling of this Court assures this protection.
>
> On the other hand, being subject to the liabilities of the Workmen's Compensation Law, and having made adequate provision for discharge of such liabilities, Hooker and its employee, Ingram, are

entitled to have their liability limited as provided in said law.

*Id.* at 360.

The Tennessee Supreme Court denied certiorari in *Carpenter* with an apparently unreported per curiam memorandum which states flatly that the Court of Appeals reached the correct conclusion:

## MEMORANDUM ON PETITION FOR WRIT OF CERTIORARI

Upon consideration of the petition for the writ of certiorari, the briefs of counsel and the entire record, we are of the opinion that the Court of Appeals reached the correct conclusion.

The writ is respectfully denied.

### PER CURIAM.

While all federal courts are familiar with the U.S. Supreme Court rule that denial of certiorari does not establish precedent for that court, in Tennessee the rule appears to be otherwise. *Pairamore v. Pairamore,* 547 S.W.2d 545 (Tenn.1977).

We recognize that injured workers' efforts to secure a right to sue for damages have met with varying results which are not always easy to reconcile. In fact, in his leading Workmen's Compensation text, Professor Larson includes a 66 page chapter of discussion and citation under the heading, "Specific Inclusions or Exemptions . . . 'Statutory Employees'." Larson, *supra* at § 49. To put the matter mildly, the distinctions he cites between what determines inclusion from what requires exclusion are not always crystal clear.

The Tennessee Workmen's Compensation statute does, however, provide a general standard against which to judge the correctness of the result in a particular case. The Tennessee Workmen's Compensation provision which is at issue here is Tenn. Code Ann. § 50–915 (1977) which we quote in full text below:

**Liability of principal, intermediate contractor or subcontractor for injuries to any employee—Remedies—Recovery.—**A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Any principal, or intermediate contractor, or subcontractor who shall pay compensation under the foregoing provisions may recover the amount paid, from any person who, independently of this section, would have been liable to pay compensation to the injured employee, or from any intermediate contractor.

Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's rights to recover compensation under this law from the principal or intermediate contractor, provided, that the collection of full compensation from one (1) employer shall bar recovery by the employee against any others, nor shall he collect from all a total compensation in excess of the amount for which any of said contractors is liable.

This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

Section 50–915 is drafted primarily in terms of the construction industry. Large construction usually requires a series of contracting parties: 1) owner, 2) principal contractor, 3) subcontractors, 4) employees. The statutory purpose appears to be to guarantee that an injured employee can find a party, "a statutory employer," which can be looked to for workmen's compensation benefits if his actual employer is 1) not covered 2) uninsured or 3) uncollectible. The owner of the building project is not referred to in the statute except to the extent, as in this case, that the owner is also found to be functioning as the general contractor.

The basic remedial purpose of the statute, and a liberal interpretation to achieve that

purpose, was set forth in a 1935 case by the Supreme Court of Tennessee wherein the general contractor disclaimed liability because the injured claimant was employed by a subcontractor who had less than five employees. In *Maxwell v. Beck,* 169 Tenn. 315, 87 S.W.2d 564 (1935), the Supreme Court of Tennessee said:

To limit the liability thus created to cases where the immediate employer is liable under the act, would place it within the power of the principal contractor to evade the act by letting the work to subcontractors who would stay beyond the reach of the statute by employing less than five persons and not electing to accept the act. Such construction would be hostile to the very purpose and intent of the act.

■ The Workmen's Compensation Act is remedial, intended to burden industry with the responsibility of industrial accidents by requiring compensation to injured employees, and is to be applied fairly and broadly to accomplish the ends intended. *Cherokee Brick Co. v. Bishop,* 156 Tenn. 168, 299 S.W. 770; *Partee v. Memphis Concrete Pipe Co.,* 155 Tenn. 441, 295 S.W. 68; *Johnson Coffee Co. v. McDonald,* 143 Tenn. 505, 226 S.W. 215. The act is to be liberally construed. *Knox v. Washer,* 153 Tenn. 630, 284 S.W. 888; *Leonard v. Cranberry Furnace Co.,* 150 Tenn. 346, 265 S.W. 543. Under this rule of liberal construction, words cannot be given a restricted or literal meaning to defeat the legislative intent. *Diamond Coal Co. v. Jackson,* 156 Tenn. 179, 299 S.W. 802.

■ It is insisted on behalf of Maxwell that the words "to the same extent as the immediate employer," found in the first paragraph of the above section of the act, must be construed as limiting the liability of the principal, intermediate, or subcontractor to cases where the immediate employer is liable for compensation under the act. The argument is pressed that Maxwell cannot be held liable to Beck because Vetter did not come within the scope of the act, in that he employed less than five persons for pay on the work he

contracted to perform, and had not elected to accept the act by filing certain written notices.

Under the above section of the act, principal contractors are made liable for injuries received by employees of subcontractors arising out of and in the course of their employment on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management. The clear intent and purpose of the Legislature in the enactment of the above section was to insure, as far as possible, to all workmen, so engaged, payment according to the schedule of benefits provided elsewhere in the act, when injured in the course of their employment.

Applying these recognized rules of construction to the above-quoted section, we think that the words "to the same extent as the immediate employer," found in the first paragraph thereof, were not intended to limit the liability of the principal, or other contractor, but were inserted for the purpose of imposing upon them liability equal in all respects to the liability imposed, by other provisions of the act, upon immediate statutory employers.

We must, therefore, conclude that the circumstance that Vetter employed less than five persons for pay, on this particular work, and had not elected to accept the act, and was not by reason of these things a statutory "employer," cannot have the effect of releasing Maxwell from liability under the act. Beck was a workman on or about the premises on which Maxwell had undertaken to execute work and was injured in the course of his employment. We think he is entitled to recover from Maxwell the compensation fixed by the act.

*Id.* at 317–19, 87 S.W.2d at 565.

In most cases, the provisions of Tenn. Code Ann. § 50–915 rebound to the benefit of workmen injured in the course of employment by reason of its imposition of statutory liability upon general contractors. In this case, of course, the immunity grant-

ed by Tenn.Code Ann. § 50–908[1] to those contractors because of their actual, or as here, potential liability for workmen's compensation serves to defeat appellants' tort liability claims. The statutory purpose of seeking to provide a much more certain, if far more limited recovery, however, has been served by the award of compensation against the insurer of the actual employer, Maury Steel. It is interesting to note that Maury Steel was the uninsured and uncollectible actual employer in *Maxwell v. Beck.*

The judgment of the District Court is affirmed.

---

1. TENN.CODE ANN., § 50–908 (1977) reads:

**Right to compensation exclusive.**—The rights and remedies herein granted to an employee subject to the Workmen's Compensation Law on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury or death.