**ANDREW JOHNSON BANK,**
**Plaintiff-Appellant,**

v.

**BRYANT, PRICE, BRANDT, JORDAN AND WILLIAMS, a partnership; Walter L. Price, Frederick H. Brandt, Leon Jordan and Eddie Williams, III, Individually; and Southern Title Insurance Company, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 27, 1987.

Permission to Appeal Denied by Supreme Court Jan. 25, 1988.

J. Ronnie Greer, Greeneville, for plaintiff-appellant.

Thomas C. McKee, Johnson City, for appellees, Bryant, Price, Brandt, Jordon and Williams.

Gene P. Gaby, Greeneville, for appellee, Southern Title Ins. Co.

## OPINION

ANDERSON, Judge.

Plaintiff-Appellant Andrew Johnson Bank ("Bank") appeals from summary judgments granted Defendants-Appellees Bryant, Price, Brandt, Jordan and Williams ("Law Firm"), individually and as a partnership, and Defendant-Appellee Southern Title Insurance Company ("Southern Title"). The sole basis of the summary judgments, and the sole issue in this appeal, is whether the Bank was collaterally estopped from litigating this action because of the issue decided against it in *Andrew Johnson Bank v. Ben Crumley, II, et al.,* a Chancery Court action appealed to and decided by this Court on June 14, 1985 (unpublished opinion), *perm. app. denied* Sept. 3, 1985.

On March 28, 1978, Hamlin–Allman Steel Corporation and Hamlin–Allman Enterprises, Inc. ("Hamlin–Allman"), entered into a written Memorandum of Terms of Agreement with Ben M. Crumley, II ("Crumley"), by which Crumley agreed to purchase Hamlin–Allman's real property, personal property, and inventory for $725,000.00, plus other consideration. Crumley was to pay ten percent down. The balance of the purchase price consisted of a series of notes secured by a mortgage lien on the personal property and a deed of trust on the real property. The Memorandum of Terms of Agreement included this paragraph:

> Appropriate security instruments will be made and provided, however, [Hamlin–Allman] agree[s] that, in order to allow for the financing of working capital, each and all such security instruments may be subordinated to an appropriate deed of trust, from time to time, up to and including a total of $150,000.00. In consideration for such subordination, [Crumley] and other subsequent principals will also personally guarantee the note or notes to be executed for such loan and for the notes contemplated by this agreement.

The contract further provided that the real estate would be transferred to Crumley unencumbered, except for a then-existing deed of trust that is not at issue here.

The sale of Hamlin–Allman's assets occurred on May 24, 1978. That same day, Crumley executed a trust deed to Hamlin–Allman securing the real estate. The trust deed was recorded on May 25, 1978, and among its provisions included the following:

[Hamlin–Allman] agree[s] to subordinate these liens from time to time to allow [Crumley] to obtain additional financing up to and including a total of $150,000.

On May 24, 1978, the Bank lent Crumley $150,000 secured by a trust deed on the property that Crumley had acquired from Hamlin–Allman. The trust deed was recorded on May 30, 1978. The Bank contracted with the Law Firm to perform the title search, prepare the trust deed, and obtain a title insurance policy in connection with the loan.

At the time the Bank lent Crumley the $150,000, it knew of the Memorandum of Terms of Agreement and the Trust Deed between Crumley and Hamlin–Allman. Further, the Bank's lending officer knew that the Bank needed a subordination agreement from Hamlin–Allman in order to secure its loan. The title insurance policy was not issued until March 1984, about six years after the Bank made the loan to Crumley, and the Law Firm never provided a final title certificate to the Bank. The Bank never requested the subordination agreement from Hamlin–Allman until Crumley had defaulted on the Bank loan, some five years after the loan had been made. When Crumley defaulted on the bank loan, the Bank sued Crumley in Chancery Court on the note seeking $98,241.77, plus interest. The Bank further sought a declaratory judgment that the language of the Hamlin–Allman trust deed subordinated it to the Bank's trust deed.

While the Chancery action was still pending, the Bank brought this suit in Circuit Court in negligence and breach of contract against the Law Firm and against Southern Title. By agreement of the parties, this Circuit action was stayed on June 26, 1984, "pending full and complete adjudication" of the Chancery action. The Chancellor thereafter awarded the Bank judgment against Crumley in the amount of $107,719.47, but held that the Hamlin–Allman deed of trust was not subordinate to the Bank's subsequently-recorded deed of trust.

The Bank then appealed the Chancery Court's decision to this Court. As we stated in our opinion in that appeal, "the real and controlling issue" was

whether the trial court [had] erred in declaring that defendants' deed of trust had priority over the bank's deed of trust.

We found that the evidence preponderated in favor of the Chancellor's finding, and affirmed the Chancery Court decision. We then noted "other compelling reasons why the bank's assertions on [the Chancery] appeal [were] without merit." We construed the clause in the Hamlin–Allman deed of trust as failing to unequivocally subordinate that trust deed to the Bank's trust deed. We then analyzed the evidence regarding the Bank's knowledge that a subordination agreement from Hamlin–Allman would be necessary and that some further action would be required in order to obtain a subordination agreement. We stated that the evidence was "clear and convincing that the clause in [Hamlin–Allman's] trust deed was not considered by anyone as a subordination clause in and of itself." We then concluded our opinion by noting that there was no merit to the Bank's argument that Hamlin–Allman was estopped to claim the priority of its trust deed.

After the Supreme Court denied the Bank's application for permission to appeal in the Chancery action, the Law Firm and Southern Title each moved for summary judgment in the Circuit Court action. Citing two phrases from our opinion in the appeal of the Chancery action that the Bank's loan officer had recognized the need for a subordination agreement from Hamlin–Allman, the trial court held that those were

determinations heretofore made by the Courts of this State, adversely to the interest of [the Bank], and to which [the Bank] is bound thereby, and which judicial determinations in turn of necessity preclude any judgment against any defendant in this case, as a matter of law.

On that basis alone, the trial court granted the Law Firm's and Southern Title's motions for summary judgment, and dismissed the case. This appeal followed.

As has been stated numerous times in Tennessee,

> the doctrine of collateral estoppel or estoppel by judgment is an extension of the principal of *res judicata,* and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment.

*Home Insurance Company v. Q.V. Leinart,* 698 S.W.2d 335, 336 (Tenn.1985). *See also, Shelley v. Gipson,* 218 Tenn. 1, 12, 400 S.W.2d 709, 714 (1966); *Booth v. Kirk,* 53 Tenn.App. 139, 143, 381 S.W.2d 312, 314 (1963).

> The familiar rule is that where the two causes of action are different, the judgment in the first suit is binding as an estoppel only as to those matters in issue, the inquiry being what point or question was actually litigated and determined in the original action, not what might have been litigated and determined.

*Cline v. Cline,* 37 Tenn.App. 696, 701, 270 S.W.2d 499, 502 (1954) (citations omitted).

We believe that the trial court erred in granting the Defendants' motion for summary judgment on the basis of collateral estoppel. The issues necessary to determine the outcome of this action were not necessary to support the judgment of the Chancery Court as affirmed by this Court in the action between the Bank and Crumley. We cannot improve upon the clarity with which we stated the issue in that appeal. "The real and controlling issue [was]

> whether the trial court erred in declaring that defendants' deed of trust had priority over the bank's deed of trust."

The sole basis of the Chancery Court's determination in that suit was the definition of "working capital" as contained in the Memorandum of Terms of Agreement between Hamlin–Allman and Crumley. We found that the evidence preponderated in favor of the findings of the Chancellor, and we affirmed the judgment.

The Supreme Court has noted in *Shelley v. Gipson,* 218 Tenn. 1, 12–13, 400 S.W.2d 709, 714 (1966), that

> Courts sometimes go beyond the point necessary for a decision in the lawsuit and make expressions on certain things there involved which are not necessary for a determination of the lawsuit. Such statements by a court are known as dictum. The term 'dictum' is an abbreviation of 'obiter dictum' which means generally a remark or opinion uttered by the way. Obviously the very definition of the term shows that it has no bearing on the direct route or decision of the case but is made aside or on the way and is, therefore, not a controlling statement to courts when the question rises again that has been commented on by way of dictum.

(citations omitted).

In our opinion on the appeal of the Chancery action, after having affirmed the findings of the Chancellor, we continued that "although the chancellor's action is dispositive of the case, there are other compelling reasons why the bank's assertions on this appeal are without merit." We then discussed other parts of the subordination issue and equitable estoppel. Those discussions, however, being unnecessary to our affirmance of the Chancellor's decision, are merely dicta. They are not the law of the case and do not collaterally estop the Bank from pursuing its action against the Law Firm and Southern Title. Furthermore, even if our subsequent discussion had been necessary to that decision, it would not have collaterally estopped the Bank from pursuing its action here.

"Generally, the interpretation of a written instrument is a question of law for the court." *Carpenter v. Hooker Chemical & Plastics Corp.,* 553 S.W.2d 356, 359 (Tenn. App.1977), *citing Provident Washington Insurance Co. v. Reese,* 213 Tenn. 355, 373 S.W.2d 613 (1963). In the appeal of the Chancery action, our interpretation of the trust deeds and the priorities established by them were questions of law. Simply

put, our opinion in the appeal of the Chancery action answered only the question "what." The issue in the instant case, however, is not a question "what" but rather a question "why." The issue framed by the Bank's action against the Law Firm and Southern Title is one of causation.

 Both the Law Firm and Southern Title assert that the admitted knowledge of the Bank's lending officer of the need for a subordination agreement established the cause of the Bank's loss. We disagree. As this Court held in *Prescott v. Adams,*

> Although the facts may not have been in dispute, a dispute did exist as to the proper interpretation of those facts. Summary judgment for the defendant is not proper where, although the basic facts are not in dispute, parties in good faith may disagree nevertheless about the inferences to be drawn from the facts.

627 S.W.2d 134, 138 (Tenn.App.1981). In addition, our examination of the record in this case and in the Chancery action leads us to believe that there are significant factual disputes in this case.

The Chancery Court noted that it would not "determine the effect of [Bank's] inexplicable, and inordinate, delay in demanding subordination of the [Hamlin–Allman's] deed of trust to the [Bank's] deed of trust." Neither did we make that determination on appeal. At the time the Chancellor issued that opinion, the Bank had already filed the instant suit raising the issues of negligence and detrimental reliance, which might have made that "inexplicable and inordinate delay" explicable and ordinate. The instant case was stayed by agreement of the parties because a decision in favor of the Bank in the Chancery action would have made moot the issues raised in this action. There is no suggestion that the parties contemplated that a stay of this case would allow litigation of the issues in the Chancery action to pretermit the issues raised here.

The absence of a full and fair hearing of the factual issues necessary to a just determination of this action is evident from the record, and the record is insufficient for us to make a just determination ourselves. As Justice Drowota noted in *Taylor v. Linville,* "[a]n appellate court should be slow to make factual determinations in the absence of a full hearing," and we believe that here, as in *Taylor,* "[t]he plaintiff was not given a full hearing, and we think this issue is, properly, to be decided by the trier of fact." 656 S.W.2d 368, 370 (Tenn.1983). Commensurate with this view, we make no determination regarding evidence already introduced in this case. Neither do we determine questions of law that may arise during further proceedings in this case. We hold only that this case is not now a proper one for determination by summary judgment, and that the sole application of collateral estoppel resulting from the appeal of the Chancery Court action is to the issue of the priority of the trust deeds.

For the foregoing reasons, the judgment of the trial court is reversed, and this case is remanded for further proceedings not inconsistent with this opinion. Costs of this appeal are taxed to the Appellees.

SANDERS, P.J., and GODDARD, J., concur.