Orville Winchester

*v.*

Albert B. Seay, d/b/a Grand Hotel, and Victor G. Bush and Thalia Bush, d/b/a Bush's Spaghetti & Pizza House.

409 S.W.2d 378.

(*Knoxville,* September Term, 1966.)

Opinion filed November 14, 1966.

Marvin Berke, Chattanooga, for plaintiff in error, Winchester.

Campbell & Campbell, Chattanooga, for defendant in error Seay.

Noone, Moseley & Bell, Chattanooga, for defendants in error Bush; Alvin Y. Bell, Chattanooga, of counsel.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This is a Workmen's Compensation case, which was dismissed by the trial judge because he found that Winchester was a mere casual employee of the Bushes and was not performing any duties at the time of the injury for Seay. An appeal has been seasonably perfected, briefs filed, arguments heard, and, after studying the record, briefs, etc., and making an independent investigation of the matter, we have the question for disposition.

Winchester was a regular employee of the defendant in error, Seay, at the Grand Hotel in Chattanooga, where he performed the duties of a handy man, such as painting, pipe fitting, firing the boiler, and running the elevator. for which he was paid $25.00 per week. The defendants in error, the Bushes, resided in the Grand Hotel, and defendant in error, Thalia Bush, operated a restaurant about two doors from the hotel.

On April 20, 1964, Winchester received a laceration of his left ring finger while cutting a piece of metal to place under the air conditioner located over the back door of the restaurant building. This work was done at the request of Thalia Bush and with the permission, or acquiescence, of the regular employer, Seay, who had previously advised the petitioner that the Bushes were guests of the Grand Hotel and that any "little thing" he could do at Bush's place would be appreciated. The petitioner testified specifically as to the injury and how he came to be doing the work when he was hurt thus:

"Q  Now, Mr. Winchester, on the 20th of May, 1964, tell us what happened insofar as how you got hurt? How did you happen to go down to Bush's?

"A  Well, she sent one of the boys come over there and told me, and I went over there to get a cup of

coffee. I said I would do—I said 'Yes, ma'am.' She done and went and got a piece of metal to put in there, and it was too short. I go back and got a piece a little longer than that about that wide (indicating).

"When I went to slit it open, when I got the piece moved, the other one rolled up and caught that finger, whacked her open."

He then goes on to tell of what treatment he had had. Mrs. Bush, or Thalia Bush, paid the doctor's bill. He likewise says he did this work at her request and suggestion and under her supervision, and that she compensated him for such work. He had done at least one job before that for which she had paid him. The record indicates that she had not paid him for this particular job, but paid him more or less on a tip basis when he came to do something like this, or gave him a dollar for some work of the kind when it was done. He was not directed on this day to go over there and do that work. He merely went on his own because his regular employer had informed him some years before since the Bushes were residents of the hotel he could do little things to help them as he wanted to. Under such circumstances the question is whether or not the work here being done is casual under our statute. Sub-section (b) of T.C.A. sec. 50-906 provides:

"Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession, or occupation of the employer."

Or is it compensable, and, if so, who is responsible for paying compensation to one thus injured?

The first thing we must consider is whether or not this work was casual so as to exclude it from the provisions of the Act. The services being performed at the time of these injuries, it is true, were more or less casual in character in the sense at least that they were not continuous and were performed only at intervals as necessity might arise. This though is true of many services which, all would concede, are necesary for the purpose of the trade or business. The question cannot have one rule applied that can determine the result in every case. The facts of each case must be weighed and considered.

It is argued by the defendants in error that the material, or substantial, evidence rule precludes a reversal of this case, because the trial judge found that this was mere casual employment. There is practically no conflict in the evidence and the relationship of Winchester to the defendants in error was a question of law. See *Cayll v. Industrial Commission*, 172 Wis. 554, 179 N.W. 771.

This being true, we now come to the determination of whether or not such employment was casual or if such an injury received in the course of such employment should be compensated. In the recent case of *Armstrong v. Spears*, 216 Tenn. 643, 393 S.W.2d 729, we again quoted, and adopted as the correct reasoning and rule to follow in such cases, from Volume 1 of Larson on Compensation, beginning particularly on page 765, as follows:

" 'Behind all of these decisions lies one simple thought; maintenance, repair, painting, cleaning and the like are "in the course" of business because the business could not be carried on without them, and because they are expectable, routine and inherent part of carrying on any enterprise.' "

The author of this treatise after discussing at length the reason for this statement and citing cases from many jurisdictions, showing the minority as well as the majority rule, and the statutes in various states, ends on page 767 with this statement:

"The net effect, then, is that such ancillary activities as maintenance and repair are now generally deemed to be within the course of an employer's usual business."

It is said in the *Armstrong* case, supra, wherein we followed this reasoning, which we had some years before followed in other cases, that this was the applicable rule to adopt when the facts so showed. We unhesitatingly feel that this is the correct rule and principle to apply in such a case, and find, as a matter of law, that under the facts of the instant case this was not such a casual employment by the Bushs as to exclude the employee from compensation, if and when injured in the course of doing this service.

We next come to the problem of who is responsible for such compensation in the case of a loaned employee as was Winchester herein. There is no one rule of application which can determine or resolve the question in every such case. In 1921, Mr. Justice Cardozo in writing for the Harvard Law Review about this question observed that the law pertaining to general and special employers is "dissent with distinctions so delicate that chaos is the consequence." Cardozo, A Ministry of Justice, 35 Harvard Law Review, 113, 121. It has likewise been said that "Respectable authority for almost any position can be found." *Nepstad v. Lambert,* 235 Minn. 1, 50 N.W.2d 614, 620. The loaned employee question has not

been dealt with specifically to any extent in this State, but we think that the statement Mr. Larson made in Volume 1, at page 710, sec. 48, states the correct rule which should be applied in such a situation, thus:

"SECTION 48.

"*LENT EMPLOYEES AND DUAL EMPLOY-MENT.*

"48.00 When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

"(a) The employee has made a contract of hire, express or implied, with the special employer;

"(b) The work being done is essentially that of the special employer; and

"(c) The special employer has the right to control the details of the work.

"When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

"Employment may also be 'dual', in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separable and can be identified with one employer or the other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of injury will be held exclusively liable."

This general formula was applied by the Wisconsin Supreme Court in *Seaman Body Corp. v. Industrial Commission,* 204 Wis. 157, 235 N.W. 433. In that case in

interpreting a Workmen's Compensation statute of Wisconsin, which is similar to our own, and in applying this formula, the court said:

"* * * the burden to compensate is placed upon the special employer whose work is being performed and upon the industry in which the employee is engaged and which is being primarily promoted."

■ This statement is in harmony with the correct interpretation of our Act to the effect that the particular industry being served at the time of the injury is responsible in these Workmen's Compensation cases where that identification can be clearly made and where other prerequisites of the employer-employee relationship exists.

■ Here Winchester was working for Thalia Bush in doing certain repair work which was necessary to be done in her restaurant, and for her alone, and was not doing anything, nor was he at the direction of Seay, and thus it is under the Lent Servant Doctrine, above quoted, we think, that Mrs. Bush is solely responsible for any amount that might be awarded Winchester for his injury. The solution to this question is not a simple one, but it depends upon the answer to the basic, fundamental and bedrock question of whether as to the special employer the relationship of employer-employee existed at the time of the injury. When the facts show, as they do here, that such a relationship did exist, the special employer should be liable for compensation for an injury received in such circumstances.

It is very ably argued here that there is no proof in the record to show how many employees, if any, Bush had and it is the duty of the petitioner to establish that the employer had five or more employees. *King v. Buckeye*

*Cotton Oil Co.,* 155 Tenn. 491, 296 S.W. 3, 53 A.L.R. 1086. This being true, it is said the decree on behalf of Bush should be sustained and the cause dismissed.

It is true that the record herein fails to show how many, if any, employees Thalia Bush had. The record though does show without preadventure of a doubt that in the trial of this case about the only thing that was under consideration by the parties was whether or not the claimant here was a casual employee, as far as the Bushes were concerned. The petition for compensation did allege that the Bushes and Seay both had five or more employees and came within the Act.

The answer of Victor Bush denied that he had anything to do with this Bush's Spaghetti and Pizza House and he denied that he had anything to do with the question at all. Thalia Bush's answer alleged that the employee was a casual employee and for that reason she was not liable for any injury to him. She did not deny that she had five employees or more or anything of the kind, but she did make a general denial of all averments of the petition, and this being true it was obligatory on Winchester to prove every essential averment of fact in the petition not admitted by the answer. Now under the factual situation as developed in this record, since it becomes necessary for us to reverse as to Thalia Bush, should the failure of the petitioner, Winchester, to prove the jurisdictional question to come under the Compensation Act prevent his having another trial of the matter, and being able to establish, if he can, these jurisdictional questions, as well as the nature of his injury and whether or not he is entitled to compensation for it? We feel that in view of the whole situation Winchester should have this chance, and upon remand he will have

the burden upon himself as is required in such matters to establish these averments of his petition as well as the nature of his injuries, etc., we having determined that the employment as it was herein was not casual and, assuming other jurisdictional questions are established in favor of the petitioner, that he is entitled to compensation from the special employer.

The case is reversed and remanded as to Thalia Bush for this purpose, but the action of the trial court as to Seay and Victor Bush is affirmed. The costs of this appeal are adjudged against Thalia Bush.