Thomas PHILLIPS and
wife Faye Phillips

v.

BRIDGESTONE/FIRESTONE, INC.

No. 3–90–0508.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 14, 1991.

John L. Norris, Hollins, Wagster & Yarbrough, Nashville, Tenn., for Thomas and Faye Phillips.

Patricia R. Young, Levine, Mattson, Orr & Young, Nashville, Tenn., for Bridgestone/Firestone, Inc.

## MEMORANDUM

JOHN T. NIXON, District Judge.

The Court is in receipt of the defendant's motion for summary judgment and its memorandum in support thereof, the plaintiffs' memorandum in opposition, and one reply brief on behalf of each party. The issue before the Court is whether the defendant is a statutory employer for purposes of the Tennessee Worker's Compensation Act. If it is an "employer" under the Act, this negligence action must be dismissed because worker's compensation benefits would be the plaintiff's exclusive remedy. Tenn.Code. Ann. § 50–6–108 (1990).

### I.

Plaintiff Thomas Phillips was injured on October 5, 1989 while working on the premises of the defendant, Bridgestone Tire Manufacturing, Inc. ["Bridgestone"], in Lavergne, Tennessee. The plaintiff was directly employed by Ogden Allied Plant Maintenance Company, Inc. ["Ogden Allied"], a corporation which supplies maintenance services to Bridgestone. Mr. Phillips was performing maintenance on a tire machine when the accident happened.

Mr. Phillips alleges that on the date of the accident a Bridgestone employee told him to replace a roller on a tire assembly machine. This task involved climbing into the machine, so the employee assured him that the machine would not be operated while he was working. Complaint, Paragraph 3, Docket Entry No. 1. The machine was activated, however, and Mr. Phillips became caught between two parts and suffered serious injuries to his pelvis. Complaint, Paragraph 3.

The plaintiff has filed a complaint in the Circuit Court of Davidson County, Tennessee, against Ogden Allied for worker's compensation benefits. Exhibit E to Defendant's motion for Summary Judgment, Docket Entry No. 16. Mr. Phillips brought this action against Bridgestone alleging that his injuries were proximately caused by the negligence of Bridgestone's employee, and Mrs. Phillips brought claims for her loss of services and companionship due to her husband's injuries. Complaint, Paragraphs 4 and 7.

In its motion for summary judgment, Bridgestone argues that it was a statutory employer of Mr. Phillips within the meaning of the Tennessee Worker's Compensation laws, see Tenn.Code. Ann. § 50–6–113, and therefore this suit is barred under the statute's exclusive remedy provision. Tenn.Code. Ann. § 50–6–108. The plaintiffs contend that Ogden Allied was an independent contractor of Bridgestone, and therefore it is permissable to bring a common law tort action against Bridgestone as a third person under Tenn.Code Ann. § 50–6–112.

Since this motion hinges on the nature of the relationship between Mr. Phillips and Bridgestone, it is important to describe in detail the facts surrounding Mr. Phillips' employment. Mr. Phillips is directly employed by Ogden Allied, which provides maintenance services to corporations across the nation. Although Ogden Allied provides maintenance services for many companies, Bridgestone is the only such company within Davidson County, Tennessee. Ogden Allied provides services to Bridgestone pursuant to a contract executed in 1983, which states in relevant part:

The scope of the work under this contract will consist of the maintenance operation in whole or in part at Bridgestone's plant at Lavergne, Tennessee, as and only when requested by Bridgestone. In addition, Bridgestone may authorize at its option other work in whole or in part. Allied will perform all work in a workmanlike manner, enforce strict discipline and order among its employees and shall not employ on the work any unfit person or anyone unskilled in the work assigned to him.

Agreement Between Bridgestone and Ogden Allied, at 1, Exhibit D to Defendant's Motion for Summary Judgment, Docket Entry No. 16 [hereinafter "Agreement"].

At the time of the accident Mr. Phillips was working an 8 to 4 shift, five days a week, at the Bridgestone plant. Deposition of Thomas Phillips at 12, 15, Exhibit H to

Defendant's Motion for Summary Judgment, Docket Entry No. 19 [hereinafter "Phillips Deposition"]. Mr. Phillips and other Ogden Allied employees received their paychecks directly from Ogden Allied.

At the time of the accident, Mr. Phillips was doing preventive maintenance on the Bridgestone tire machines. Preventive maintenance was done every day pursuant to a weekly schedule set by Bridgestone, but under the immediate supervision of an Ogden Allied employee named Don Bolin. Phillips Deposition, at 14. Ogden Allied was responsible for disciplining its own employees, and Bridgestone disciplined its own employees. Deposition of Mike Seneker, at 17, Exhibit J to Bridgestone's Reply to Plaintiff's Memorandum in opposition to Bridgestone's Summary Judgment Motion, Docket Entry No. 29 [hereinafter "Seneker Deposition"]. Bridgestone did not have the authority to discharge workers employed by Ogden Allied. Seneker Deposition, at 19.

Mr. Phillips and other Ogden Allied workers are responsible for furnishing their own basic tools, and they can borrow additional tools from a store maintained on the premises by Bridgestone. Phillips Deposition, at 17–18. The employees also receive an allowance from Ogden Allied to help pay for their tools, and Bridgestone reimburses Ogden Allied for the full amount of the allowance. In addition, Ogden Allied employees wear coveralls furnished by Bridgestone; they arrive for work in street clothes, check out the coveralls from the Bridgestone store, and then return them at the end of the work day. Phillips Deposition, at 16.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The Advisory Committee for the Federal Rules has noted that "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West.Ed.1990).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the U.S. Supreme Court explained the District Court's function in ruling upon a motion for summary judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

\*    \*    \*    \*    \*    \*

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

\*    \*    \*    \*    \*    \*

... we are convinced that the inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run of the mill civil case moves for sum-

mary judgment ..., on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

477 U.S. at 247–8, 106 S.Ct. at 2509–12. (emphasis in original) (citations omitted).

■ The party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is true, however, that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute ...'" *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962) (citations omitted). As the Sixth Circuit Court of Appeals stated recently:

Summary judgment may only be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. All facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) *cert. denied*, 444 U.S. 986 [100 S.Ct. 495, 62 L.Ed.2d 415] (1979).

*Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir.1986) *app.* 840 F.2d 16 (6th Cir.1988) (unpublished opinion).

The Supreme Court said there is no "genuine issue for trial" "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

In *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478–80 (6th Cir.1989), the Sixth Circuit discussed the trilogy of leading Supreme Court cases on summary judgment, and synthesized ten rules to guide the Circuit into the "new era" of summary judgment motions. *J.C. Bradford*, 886 F.2d at 1479–80. The Court of Appeals stated that "[t]he respondent must address more than a scintilla of evidence to overcome the motions [and] ... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *J.C. Bradford*, 886 F.2d at 1479. In addition, the Court of Appeals warned that:

The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480. *See also Hutt v. Gibson Fiber Glass Products*, 914 F.2d 790 (6th Cir.1990) ("A Court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one sided that one party must prevail as a matter of law." (quoting *Anderson v. Liberty Lobby, supra*).

In a recent decision, the Court of Appeals further explained the district court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly appraised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989) (citations omitted) *cert. den.* —— U.S. ——, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990).

Here, the parties have given specific references to the proof upon which they rely, e.g., to "deposition excerpts" and other documents.

■ Under these holdings, it appears that upon a motion for summary judgment, three questions are to be asked: (1) does the plaintiff present sufficient facts to establish all the elements of his claim? (2) are those facts sufficient to support a jury verdict or judgment? and (3) are there any material issues with respect to those facts?

### III.

■ When a district court's jurisdiction is invoked under diversity of citizenship pursuant to 28 U.S.C. § 1332, the court must apply the substantive law of the state in which it is situated. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, the Court will apply the laws of the state of Tennessee in deciding the defendant's motion.

### IV.

■ Having stated the applicable standards and the governing law, the Court will now turn to the merits of the case. The issue facing the Court is whether the relationship between Mr. Phillips, Ogden Allied, and Bridgestone is such that, under Tennessee law, the plaintiffs' common law negligence action against Bridgestone is barred by the exclusive remedy provision of the Worker's Compensation statute.

The basis for liability under the Worker's Compensation Act is the employer-employee relationship. The Tennessee Supreme Court has frequently denied a worker benefits because he was an independent contractor, and therefore not an employee within the meaning of the Act. *See, e.g., Masiers v. Arrow Transfer & Storage Company,* 639 S.W.2d 654 (Tenn.1982); *Lindsey v. Smith & Johnson, Inc.,* 601 S.W.2d 923 (Tenn.1980).

A worker can recover benefits from an employer other than his immediate employer, however, under Tenn.Code. Ann. § 50–6–113 (1990). That provision states, in relevant part:

> *Liability of principal, intermediate contractor or subcontractor.*—(a) A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.
>
> (b) Any principal, or intermediate contractor, or subcontractor who shall pay compensation under the foregoing provisions may recover the amount paid, from any person who, independently of this section, would have been liable to pay compensation to the injured employee, or from any intermediate contractor.

(c) Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's rights to recover compensation under this chapter from the principal or intermediate contractor; provided, that the collection of full compensation from one (1) employer shall bar recovery by the employee against any others, nor shall he collect from all a total compensation in excess of the amount for which any of the contractors is liable.

\* \* \* \* \* \*

This provision creates "statutory employers" who will be liable for worker's compensation benefits if recovery is unavailable against the injured employee's immediate employer. *Posey v. Union Carbide Corp.*, 705 F.2d 833, 834 (6th Cir.1983). The intent of this section is to protect employees from subcontractors who are unable to pay benefits, and to insure as far as possible that benefits are received by all workers who are entitled to them. *Stratton v. United Inter–Mountain Tel. Co.*, 695 S.W.2d 947 (Tenn.1985).

The exclusive remedy provision of the worker's compensation law states that any party responsible for paying benefits, either an immediate employer or a "statutory employer" under § 50–6–113, is immune from actions other than worker's compensation when an employee suffers injuries at the workplace. That provision states, in relevant part, that:

The rights and remedies herein granted to an employee subject to the Worker's Compensation Law on account of personal injury ..., shall exclude all other rights and remedies of such employee ...

Tenn.Code Ann. § 50–6–108. Bridgestone contends that it is a statutory employer within the meaning of § 50–6–113, and therefore the plaintiffs' common law negligence action against it is barred by the exclusive remedy provision.

The plaintiffs contend that Ogden Allied is an independent contractor of Bridgestone, and therefore their negligence action

may proceed against Bridgestone under Tenn.Code Ann. § 50–6–112. The relevant portion of that section provides:

*Actions Against Third Persons*—(a) When the injury or death for which compensation is payable under the Worker's Compensation Law was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker, or his dependents, shall have the right to take compensation under such law, and such injured worker, or those to whom his right of action survives at law, may pursue his or their remedy by proper action in a court of competent jurisdiction against such other person.

The plaintiffs contend that Ogden Allied is an independent contractor, and therefore they may bring a negligence action against Bridgestone as a "person other than the employer" under § 50–6–112.

The issue facing the Court, therefore, boils down to whether Bridgestone is Mr. Phillips' "statutory employer" under § 50–6–113. In analyzing whether a relationship is one of employer-employee or that of independent contractor, the Tennessee Supreme Court has said that six factors should be considered:

1) right to control conduct of the work;

2) right of termination;

3) method of payment;

4) whether the alleged employee furnished his own helpers;

5) whether the alleged employee furnished his own tools;

6) whether the alleged employer is doing "work for another."

*Stratton v. United Inter–Mountain Tel. Co.*, 695 S.W.2d 947 (Tenn.1985).

The first *Stratton* factor, the right to control the conduct of the work, presents a close question of law. The issue is not whether Bridgestone exercised the right to control the work done by Mr. Phillips, but whether the right existed. *Jones v. Crenshaw*, 645 S.W.2d 238, 240–41 (Tenn.1983); *Wooten Transports v. Hunter*, 535 S.W.2d 858, 860 (Tenn.1976).

The *Stratton* court faced a factual scenario similar to the case at bar. The plaintiff suffered injuries while working on a telephone pole owned by the defendant. The plaintiff's immediate employer, the Wright and Lopez Construction Company, was performing work for the defendant pursuant to a contract. *Stratton*, 695 S.W.2d at 948. The plaintiff recovered worker's compensation benefits from Wright and Lopez, and when he sued the telephone company in tort, the company claimed to be a principal contractor under Tenn.Code Ann. § 50–6–113[1]. *Id.* The Court relied on the following facts in finding that the defendant retained sufficient control over the work that is should be deemed a statutory employer: the defendant had the right to request the plaintiff's immediate employer to remove any employee with whom it was not satisfied; it retained the right to direct the order of precedence or priority in which the work was done; the plaintiff was performing work normally done by the defendant's employees; the defendant controlled the materials to be used, the employees to be used on the job, and the general manner in which the job was to be performed. *Stratton*, 695 S.W.2d at 953.

The parties in this case have each submitted affidavits which address the control issue. Bridgestone has submitted virtually identical affidavits from two Ogden Allied employees and one of its own employees. These affidavits state:

"The work by Ogden Allied was defined by Bridgestone including:

a. The scope of the work that was performed;

b. The hours during which the work was to be performed;

c. The rules and regulations under which Ogden Allied employees performed their work.

Bridgestone retained the right to direct and control the work done by Ogden Allied

employees and to direct and instruct Ogden Allied employees in the performance of their duties."
Affidavit of Michael Seneker, Paragraphs 5, 6,; Affidavit of Donald Field, Paragraphs 6, 7; Affidavit of Donald Bolin, Paragraphs 6, 7. Exhibits A, B, and C, Memorandum in Support of Defendant's Motion for Summary Judgment, Docket Entry No. 20.

However, the plaintiff Thomas Phillips stated in his affidavit that: "I did not consider that Bridgestone had the right to control the details of my work. I did the preventive maintenance work that needed to be done on the tire building machines according to my methods. Bridgestone employees did not tell me how to do my work." Affidavit of Thomas Phillips, Paragraph 4, Exhibit 1 to Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, Docket Entry No. 26.

Other evidence indicates that the plaintiff was hired by Ogden Allied, and only Ogden Allied had the power to terminate him. Seneker Deposition, at 19. While Mr. Phillips was under the immediate supervision of an Ogden Allied employee named Don Bolin, he performed maintenance in compliance with a weekly schedule set by Bridgestone, and given to Mr. Phillips' supervisor by a Bridgestone employee named Bobby Duke. Phillips Deposition, at 14–15. No Bridgestone employee, however, was responsible for telling Mr. Phillips what to do or how to perform his maintenance duties. Seneker Deposition, at 18–19.

Although the affidavits submitted by the parties reach different conclusions concerning the control issue, the Court finds that the affidavits are essentially consistent with each other and with the rest of the evidence in the case. It appears to the Court that Bridgestone instructs Ogden Allied about what maintenance is required each week, but Bridgestone exercises little, if any, control over the daily activities of the plaintiff.[2]

---

1. This is the same argument raised by the defendant in the instant case.

2. The following excerpt from the deposition of Michael Seneker, Division Manager at the Bridgestone plant, illustrates the lack of direct

control exercised by Bridgestone over the plaintiff:

Q. The Ogden Allied employees would do whatever maintenance work was required, I take it.

The question of control is a close one, however, because Bridgestone is only required to show that the right to control exists, not that it is actually exercised. *Wooten Transports*, 535 S.W.2d 858. Under this standard, there is some evidence before the Court which indicates that the right to control exists. *See* Agreement, Article II; Affidavits of Seneker, Field and Bolin. Nevertheless, the sum of the affidavits and depositions on file lead the Court to conclude that, as a practical matter, Bridgestone did not have the right to control Mr. Phillips' employment under the *Stratton* standard. The Court reaches this conclusion because Ogden Allied paid its employees directly, it supervised them, it was responsible for disciplining them, it alone could terminate them, and most importantly, although the proof indicates that Bridgestone assigned general maintenance work to Ogden Allied each week, Bridgestone did not assign specific tasks to the plaintiff, or give him orders in any way.[3]

The second *Stratton* factor, the right of termination, weighs in favor of the plaintiffs. Bridgestone did not have the right to terminate Ogden Allied employees, and the Agreement between Bridgestone and Ogden Allied makes clear that Ogden was responsible for maintaining order and discipline among its employees. Seneker Deposition, at 19; Agreement, Article II. This is in contrast to *Stratton*, where the Court relied on the fact that the defendant had retained the right to have unsatisfactory

employees removed. *Stratton*, 695 S.W.2d at 953.

The third *Stratton* factor, the method of payment, provides further support for the plaintiff's position. Bridgestone pays Ogden Allied for maintenance services pursuant to their contract, and Ogden Allied pays Mr. Phillips his salary. Payments are never made directly from Bridgestone to Mr. Phillips. The fourth factor, whether the plaintiff provided his own helpers, is not applicable since Mr. Phillips is an employee of another company; any helpers he needed would obviously be furnished by Ogden Allied.

The fifth factor, whether the plaintiff furnished his own tools, presents a close question. Mr. Phillips and other Ogden Allied workers are responsible for furnishing their own basic tools, and they can borrow additional tools from a store that Bridgestone maintains on the premises. Phillips Deposition, at 17–18. The employees also receive an allowance from Ogden Allied to help pay for their tools, and Bridgestone reimburses Ogden Allied for the full amount. In addition, the Ogden Allied employees wear coveralls furnished by Bridgestone. They arrive for work in street clothes, check out the coveralls from the Bridgestone store, and then return them at the end of the work day. Phillips Deposition, at 16. Based on these facts, the Court cannot find that the fifth factor provides strong support for either side's position.

---

A. Right.

Q. But they would not be told, the actual people doing the PMs (preventive maintenance), for example, would not be told how to do their work by Bridgestone employees, would they?

A. Not specifically. These are supposed to be—we hired these as qualified craftsmen that would be capable of performing maintenance work and no, we don't tell them, "Well, tighten that bolt, loosen that bolt." We don't go to that extent.

Seneker Deposition, at 18.

3. In reaching this conclusion, the Court does not rely on the portion of the Agreement between Bridgestone and Ogden Allied which states:

"Allied will perform all work as an '*independent contractor* ...'"

Agreement, Article II (emphasis added).

Although this portion of the agreement seems to state unequivocally that Ogden allied is an independent contractor, the Tennessee courts have held that when the facts are essentially undisputed, the question of whether one is an employee or an independent contractor is a question of law for the Court to decide. *Stratton*, 695 S.W.2d at 953, citing *Seals v. Zollo*, 205 Tenn. 463, 327 S.W.2d 41 (1959); *Brademeyer v. Chickasaw Building Co.*, 190 Tenn. 239, 229 S.W.2d 323 (1950). The parties cannot take this responsibility away from the Court by defining the relationship in a contract. *Stratton*, 695 S.W.2d at 953. Accordingly, the Court must determine the nature of the parties' relationship independently, rather than rely on the statement in the contract that Ogden Allied is an independent contractor.

The sixth and final factor under *Stratton* is whether the defendant is doing "work for another." The rationale behind this criterion is that if the defendant is performing work for a third party, it bolsters the argument that it is a "principal contractor" under Tenn.Code. Ann. § 50–6–113, and may be held responsible for worker's compensation benefits (and therefore immune from other suits). *See Clendening v. London Assurance Co.*, 206 Tenn. 601, 336 S.W.2d 535 (1960). However, the Tennessee Supreme Court has recently held that the "work for another" test is not dispositive and, in fact, is less important than the issue of whether the defendant maintains control over the work. *Stratton*, 695 S.W.2d at 952. Therefore, the fact that Bridgestone was not undertaking "work for another" lends a certain degree of support to the plaintiffs' contention that Bridgestone may not be held liable for worker's compensation benefits as a principal contractor, and therefore may be sued in tort, but it is not decisive.

Based on the six factors given in *Stratton*, it appears to the Court that Bridgestone was not a statutory employer of Mr. Phillips, and therefore this negligence action is not barred by the exclusive remedy provision of the worker's compensation laws.

## V.

Bridgestone also contends that it is entitled to the immunity provided in the worker's compensation laws under the "borrowed servant" or "loaned employee" doctrine. Under this doctrine, if it is determined that a worker's regular employer lends him to a "special employer" to perform certain duties, the special employer can be considered an employer for purposes of worker's compensation. *Winchester v. Seay*, 219 Tenn. 321, 409 S.W.2d 378 (1966). In order for an employee to be considered a "borrowed servant," the following three conditions must be met:

(a) The employee has made a contract of hire, express or implied, with the special employer;

(b) The work being done is essentially that of the special employer;

(c) The special employer has the right to control the details of the work.

*Winchester v. Seay*, 409 S.W.2d at 381, quoting from *Larson on Compensation*, § 48.

In this case at lease two of the conditions are not satisfied. The first condition cannot be satisfied, because there is no evidence of a contract between Phillips and Bridgestone. In addition, the third condition cannot be satisfied because this Court has determined, for reasons given in Part IV, that Bridgestone does not have the right to control the details of Mr. Phillips' work. Accordingly, the Court finds that the contention that the defendant is entitled to the protection of the worker's compensation immunity provisions under the "borrowed servant" doctrine to be without merit.

## VI.

For the foregoing reasons, the Court finds as a matter of law that Bridgestone is not a statutory employer of the plaintiff under Tenn.Code. Ann. § 50–6–113, and therefore it is not entitled to the immunity against other actions provided by § 50–6–108. Accordingly, the defendant's motion for summary judgment will be

DENIED.