Karen A. BOGUS, Plaintiff/Appellant,

v.

**MANPOWER TEMPORARY SERVICES and Cigna Insurance Company, Defendants/Appellees.**

Supreme Court of Tennessee, at Knoxville.

Jan. 6, 1992.

G. Turner Howard, III, Milligan & Gilbert, P.C., Knoxville, for plaintiff/appellant.

James N. Gore, Jr., Kennerly, Montgomery & Finley, P.C., Knoxville, for defendants/appellees.

O'BRIEN, Justice.

In this workers' compensation case the plaintiff, Karen Bogus, has appealed the trial court judgment dismissing her claim for benefits because of failure to provide sufficient notice to the employer, Manpower Temporary Services. Cigna Insurance Company is the workers' compensation insurance carrier for Manpower, which provides temporary employees to other businesses and agencies.

Ms. Bogus was employed with Manpower Temporary Services and assigned to work as a data entry clerk for the Tennessee Valley Authority (TVA). The TVA offices to which Ms. Bogus was assigned were located at the Cherokee Place Office Complex in Knoxville. She had worked there for over one (1) year prior to 12 January 1988 when the accident occurred resulting in her injury. Several days prior to the accident Knoxville had experienced a heavy snow storm. There was an accumulation of ice and snow remaining in her office building parking lot.

On the date of the accident Ms. Bogus arrived at her work place at the normal time. She pulled into the Cherokee parking lot and parked in her assigned space. She got out of her car and walked to a mailbox near the entrance of the parking lot to mail some personal letters. On her way back from the mailbox, just before reaching a cleared pathway, she slipped on a patch of ice and fell near the area reserved for the parking of handicapped drivers. The handicapped parking spaces were located adjacent to the front entrance of the building, normally used by TVA employees to enter the building. After she fell, Ms. Bogus was able to pick herself up, enter the building and relate the details of the mishap to several people there.

In addition to informing several co-employees, she also notified Mr. Mike Hill, who she testified served in a supervisory capacity of contract employees at TVA. On direct examination she testified as follows:

Q. Karen, at this point, could you state what the position of Mr. Hill was?

A. He was the temporary supervisory (sic) over contract employees. We had to turn our time sheets into him. Anything that—as contract employees, we had to go through him—which he was not our direct supervisor. We had someone else over him, but he was the one we would report to."

On cross-examination she was asked and responded:

Q. You didn't know that you should call Manpower?

A. No, not really, because we were never in contact with Manpower. Any contact we had with Manpower was usually made through someone at T.V.A. They would usually call and talk to them, or—the only problem we would have when we talked to Manpower was when something went wrong on our time sheets. Otherwise we didn't stay in contact with Manpower at all. I never went to a different job, so I had no reason—I stayed on the same job the whole time.

\* \* \* \* \* \*

Q. At any time during that hospital stay, you had never contacted your employer at Manpower; is that right?

A. They were contacted though. I didn't contact them, but they were contacted, because I was out of work. So Mike Hill had to contact them and let them know what had happened, and he did. Because if we were going—ever going to be out of work, they did report

to them if we were going to miss a lot of time. So they were contacted.

On the same day of the accident, Ms. Bogus contacted legal counsel by selecting a name from the public telephone listings. Counsel advised her to see a physician and recommended a Dr. Worthington. She telephoned Dr. Worthington and scheduled an appointment for early the next week. Meanwhile, she continued working that day and reported for work through the rest of the week.

The next week, on the day before her scheduled doctor's appointment, Ms. Bogus found the pain to be so intense she visited a hospital emergency room. The attending physician immediately determined that her injuries were severe enough for in-hospital care and admitted her to the hospital for treatment of various infections and other infirmities related to the 12 January accident. She was released after ten (10) days in-patient care and continued physical therapy on an out-patient basis.

The case came to trial in May 1990. At the end of all the proof, defendants moved for dismissal based on three (3) grounds. First, that plaintiff failed to provide the employer with adequate notice of the accident and injuries. Second, the injury occurred outside the course and scope of plaintiff's employment. Third, that she did not receive authorization from the employer for the medical services rendered.

■ Without considering the second or third issues, the trial court ordered a dismissal upon the first issue concerning notice. We disagree on the issue of notice and for the following reasons reverse the dismissal and remand the case to the trial court for a determination of the claim on its merits.

The scope of review in this Court is de novo upon the record of the trial court, accompanied by a presumption of correctness of the findings of that Court, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225.

■ The law in Tennessee is well settled that the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensa-tion under the workers' compensation law. *Aetna Casualty & Surety Co. v. Long*, 569 S.W.2d 444 (Tenn.1978); T.C.A. § 50–6–201. However, in the area of general and special employers, there is no one rule of application which can determine or resolve the liability for compensation in every case. *See Winchester v. Seay*, 219 Tenn. 321, 409 S.W.2d 378, 380 (1966).

This issue of general and special employers has created a wide range of controversy in the law among the various jurisdictions of this nation. Some have resolved the issue by case law, as in the State of Tennessee. Others have promulgated statutory law to deal with the situation. We are impressed by the reasoning in *Bennett v. Mid–South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983). In that case the plaintiff had filed a negligence action against a company which had contracted with a supplier for temporary labor. The facts of the case were remarkably similar to those involved here. On the day of the alleged injury the plaintiff was an employee of a supplier of temporary manpower to industries and other companies. His employer supplied plaintiff as one of the workers for the defendant. The evidence showed, as appears to be the case here, that the employer received a fixed sum per hour for the plaintiff's labor. It carried workers' compensation insurance on the employees and directly compensated those employees who were placed on the job. In applying the test found in *Winchester v. Seay*, supra, and § 48 of Larson on Compensation, dealing with the "borrowed servant" or "loaned employee" doctrine, to determine the liability of the defendant, the court cited from *Danek v. Meldrum Mfg. & Engineering Co., Inc.*, 312 Minn. 404, 252 N.W.2d 255 (1977), based on similar facts:

> [W]e think it is quite clear that plaintiff consented to work for defendant and that such was pursuant to an implied contract between them. In this case plaintiff knew when he was hired by Manpower that all of his work would actually be performed for various customers of his general employer. *The very fact that he entered into an employment arrangement of that nature would constitute a general consent to work for special em-*

*ployers such as defendant.* (Emphasis in original text).

The *Bennett* court held that under those facts the defendant was a co-employer of the plaintiff at the time of his alleged injury. We conclude that the same rule should be applicable in this case.

 Under the facts involved here we have no hesitancy in declaring that Mike Hill, the immediate supervisor over contract employees, was the representative of Manpower for the purpose of workers' compensation notice of injury. Although he was a TVA employee, he was plaintiff's primary contact with Manpower. Contract employees turned in their time sheets to him. The Manpower employees at TVA had to go through him to reach Manpower and he was the person to whom they would report. It was his duty to contact Manpower if an employee was going to miss time off from work. Timely notice to the agent or representative of the employer is sufficient notice, provided the agent or representative to whom notice is given has actual or apparent authority to receive notice on behalf of the employer. *See Kirk v. Magnavox Consumer Electronics Co.*, 665 S.W.2d 711, 712 (Tenn.1984).

Moreover, it is unrefuted in this record that in the early part of February, within 30 days after plaintiff's accident, she received a phone call from William E. Henson, an official of Manpower Temporary Services soliciting information about her claim. It is obvious that the defendant had actual notice of plaintiff's injury sufficient to satisfy the requirements of T.C.A. § 50–6–201.

The judgment of the trial court dismissing this cause is overruled and reversed. The case is remanded for such other and further proceedings as may be required on the merits. The costs on this appeal are assessed to the defendants.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.