19 F.3d 18
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert Dale BELEW and Norma Belew, Plaintiffs-Appellants,
v.
LAFAYETTE STEEL ERECTOR, INC., Defendant-Appellee.
 No. 92-5560.
 United States Court of Appeals, Sixth Circuit.
 Feb. 18, 1994.
 
 Before: RYAN and BOGGS, Circuit Judges; and ROSEN, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The plaintiffs, Robert Dale Belew and Norma Belew, appeal from the district court's grant of summary judgment in favor of the defendant, Lafayette Steel Erector, Inc., in this diversity tort action. Robert Belew was injured in the course of his employment, and contends that the accident was due to the negligence of an employee of the defendant.
 
 
 2
 We conclude that the district court correctly decided that, at the time of the accident, the allegedly responsible employee was acting as a "loaned servant" of Robert Belew's employer. There is, accordingly, no basis for liability on the part of the defendant.
 
 
 3
 We shall, therefore, affirm the district court's grant of summary judgment.
 
 I.
 
 4
 Robert Belew was injured while working for E.G. Smith Construction Company, a subcontractor at a Saturn construction site in Spring Hill, Tennessee. The injuries resulted when a forklift, driven by Billy Choate, ran over Belew. Belew contends that the accident was caused by Choate's negligent operation of the forklift. Choate was employed by the defendant, Lafayette Steel, another subcontractor at the site. Belew and his wife sued Lafayette Steel on a theory of respondeat superior, and demanded $2.5 million in damages.[1]
 
 
 5
 According to Choate, his foreman, Fred Cheney, told him to take the forklift he was operating and go with Belew in order "to do some favors for Mr. Belew, on behalf of [Belew's] employer E.G. Smith Construction Company." It was customary on the construction site for subcontractors to help each other out with various tasks. Choate therefore followed Belew to a site "designated for use by E.G. Smith Construction Company" called a "laydown area." Smith needed a forklift to move a press brake from one part of the construction site to another. Choate claims that, at the time of the accident, he "was taking [his] directions for movement and the direction of the skytrack [i.e., forklift] from Mr. Belew." Choate nonetheless acknowledges that if Cheney, his supervisor, had approached him in the middle of moving the press brake and told him to leave the Smith site to come help Cheney, he would have gone with Cheney, even if Belew had told him to remain. Likewise, "[i]f Mr. Belew had asked [him] to do something that [he] felt was dangerous ... to Lafayette's equipment," he would not have done it. He considers himself, though, to have been "under E.G. Smith's control" at the time of the accident, "[b]ecause that was who Fred [Cheney] had put [him] with."
 
 
 6
 Belew's story is slightly different. According to his affidavit, he asked Cheney for assistance in moving a press brake because Smith did not have the necessary equipment. Cheney told him that he would send a forklift operator over to Smith's site when one became available. Belew returned to Lafayette's site about thirty minutes later because no forklift operator had yet arrived; Cheney then agreed to send Choate. Choate followed Belew back to Smith's site, although Belew asserts that he "was not specifically leading [Choate] back, since [he] assumed [Choate] knew the way." Belew acknowledges that Smith employees "rigged" the press brake that Choate was to move with the forklift. Belew also "walked along beside the forklift ... as the press brake was being moved," and "act[ed] as a flag man in the movement of the forklift...." He says that when the forklift came to an intersection, he held his arm up to signal Choate to stay still. Choate did not see this signal. The forklift moved forward and pinned Belew under the wheels. Belew claims that "[a]t no time did I or any other employee of Smith have any control over the work which was to be done by Choate.... [W]e had no control over the manner in which the job was to be accomplished by Choate." He emphasizes that he "did not ever give Mr. Choate any orders or directions in how he should operate the forklift with a crane boom.... At all times ..., Billy J. Choate was under the control and direction of Fred Chenny [sic], the Lafayette superintendent." The record is clear, however, that neither Cheney nor any other Lafayette superintendent was on the Smith site at the time of the accident.
 
 
 7
 On cross-motions for summary judgment, the district court framed the relevant question as being whether "the loaned servant doctrine and/or the exclusive remedy provision of the Tennessee Workers' Compensation Law bar the plaintiffs' claims...." The court concluded that Choate was effectively under the control of E.G. Smith, and acting in its interest, when the accident occurred. He was, therefore, a "loaned servant" of E.G. Smith, and Lafayette Steel was not liable for any negligence on Choate's part. Accordingly, the court held, workers' compensation was the sole remedy available to the plaintiffs.
 
 
 8
 The plaintiffs timely appeal.
 
 II.
 
 9
 The court's review of a grant of summary judgment is de novo; it uses the same test as used by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Under Fed.R.Civ.P. 56(c), summary judgment is proper if all the evidence before the district court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These rules of review apply where, as here, the parties have filed cross-motions for summary judgment. Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991).
 
 
 10
 Subject matter jurisdiction in this case arises out of diversity of citizenship. 28 U.S.C. Sec. 1332. Under the Erie doctrine, the law of Tennessee should be applied in this case, as that is the state in which the court below sits. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court reviews de novo the district court's determination of what Tennessee's substantive law is. J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1483 (6th Cir.1991).
 
 III.
 
 11
 The plaintiffs argue that the only direction given by Belew or any Smith employee to Choate was as to the desired end result: the relocation of the press brake. No Smith employee, they argue, attempted or was qualified to instruct Choate specifically on how to operate the forklift. Thus, Smith's direction, they assert, does not bear the indicia of control necessary to a determination that Choate was a loaned servant. They characterize Choate's testimony--that if Belew and his own supervisor had given him contradictory orders, he would have obeyed his supervisor--as demonstrating that Lafayette had not surrendered full control over Choate.
 
 
 12
 In response, Lafayette points to what it argues are the indicia of Smith's control over the operation that led to the accident. A Smith employee, Belew, solicited the lending of the equipment and the operator; Smith owned the press brake that was being moved; Smith employees designated where the item was to be placed; Smith employees assisted in the rigging of the press brake; and a Smith employee acted as flagman for moving the brake. Smith was in control of the entire procedure that led to the accident, the defendant says, and therefore was in control of Choate.
 
 
 13
 Tennessee law provides that, when applicable, workers' compensation provides the sole remedy for an employee in a suit against an employer for injuries sustained on the job. Tenn.Code Ann. Sec. 50-6-108. The workers' compensation statute does not, however, bar an injured employee's right of action against a third-party tortfeasor other than the employer. Tenn.Code Ann. Sec. 50-6-112; see also McAlister v. Methodist Hosp., 550 S.W.2d 240, 242 (Tenn.1977). Thus, the issue here is whether, at the time of the accident, Choate was acting as a servant borrowed by, or loaned to, E.G. Smith, or whether he was instead acting as the servant of his employer, Lafayette Steel. In the latter event, Belew would be entitled to sue Lafayette under the doctrine of respondeat superior, because Choate would be a third-party tortfeasor. In the former event, though, Belew's suit would be barred and his only remedy would be under the workers' compensation laws, because Choate would be considered his fellow employee. See Sturkie v. Bottoms, 310 S.W.2d 451, 452 (Tenn.1958).
 
 
 14
 The parties to this appeal both focus on Gaston v. Sharpe, 168 S.W.2d 784 (Tenn.1943), characterizing it as the preeminent Tennessee case on the issue of loaned servants. The Tennessee Supreme Court, however, recently decided Catlett v. Indemnity Ins. Co., 813 S.W.2d 411 (Tenn.1991), in which the issue was whether the plaintiff's deceased husband, who had died of asbestosis, was a loaned servant of the company at which he was working when he died, which would have precluded worker's compensation recovery against his usual employer. Catlett arose from a different contextual posture than that present here; specifically, the question was whether the allegedly borrowing, or special, employer was liable for workers' compensation given that the borrowed, or loaned, employee had an accident while accomplishing the temporary task. We nonetheless conclude that, as a matter of necessity, the test prescribed by Catlett and related cases is equally applicable for the purpose of determining whether the allegedly lending, or general, employer is liable for tort damages when the employee causes an accident to someone else. The Tennessee courts have in no way indicated that the different situations would implicate different tests, and have consistently spoken of the test in neutral terms, regardless of the context in which the question arises.
 
 The Catlett court first noted that
 
 15
 the controlling test for when an employee becomes a loaned servant was set out in Winchester v. Seay, 219 Tenn. 321, 409 S.W.2d 378 (Tenn.1966). In that case, the injured worker was a regular employee of the Grand Hotel in Chattanooga where he performed maintenance duties, and was paid a regular salary. On the day in question, he was requested by the owner of a restaurant ... to adjust an air conditioner at a restaurant located two doors away from the Grand Hotel....
 
 
 16
 The employee ... was injured while repairing an air conditioner in the restaurant. This work was done at the request of the restaurant owner and with the permission, or acquiescence, of the regular employer.
 
 
 17
 Id. at 414. As explained by the Catlett court, the plaintiff in Winchester was a loaned servant because
 
 
 18
 the injured employee had been working for the restaurant owner doing repair work which was necessary to be done in the restaurant and for it alone. It was further noted that none of the work being performed was done for the regular employer, nor was the injured worker at the direction of the regular employer at the time he was injured.... [A]ccordingly, the owner, the special employer, became solely responsible for the injury sustained while the worker was adjusting the air conditioner.
 
 
 19
 Id. at 414-15. The Catlett court then repeated, with approval, the rule laid down in Winchester:
 
 
 20
 When a general employer loans an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.
 
 
 21
 Id. at 415 (citation omitted). The Catlett court concluded that the employee at issue in its case was a loaned servant, focussing especially on the third, "control" prong of the loaned servant test.[2]
 
 
 22
 In deciding the question presented in this case, we are aided by reference to the RESTATEMENT (SECOND) OF AGENCY, which has been consistently relied on by Tennessee courts considering this subject. According to the RESTATEMENT, the pertinent question is
 
 
 23
 whether or not, as to the act in question, [the employee] is acting in the business of and under the direction of one or the other [employer]. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act.
 
 
 24
 RESTATEMENT (SECOND) OF AGENCY Sec. 227 (quoted in Gaston, 168 S.W.2d at 784); see also Price v. McNabb & Wadsworth Trucking Co., 548 S.W.2d 316, 318-19 (Tenn.Ct.App.1976). The RESTATEMENT further emphasizes that "[a] person who is not in such a business and who, gratuitously or not, as a matter not within his general business enterprise, permits his servant and instrumentality to assist another, is more apt to intend to surrender control." RESTATEMENT (SECOND) OF AGENCY, Sec. 227 cmt. c.
 
 
 25
 At oral argument, the plaintiffs focussed on the fact that Choate had expertise over the forklift that Smith employees did not have, and that Belew could not be said to be directing Choate at the instant of the accident because Choate had momentarily lost sight of Belew. First, the fact that a forklift is a complicated piece of machinery whose operation does not easily admit of advice from non-experts is not, under Tennessee law, a dispositive or even a relevant issue as to whether Choate was a loaned servant. The test does not depend on the particular task an individual employee has been loaned out to perform. Likewise, Tennessee case law makes clear that the question is not whether Choate was following Belew's directions with utmost attention, but rather, which employer, Lafayette or Smith, was responsible for attempting to dictate Choate's actions at the time of the accident. If the plaintiffs' suggestion were correct, then the question of whether someone was a loaned servant would change from moment to moment, depending on whether the person was heeding the direction of his special employer.[3]
 
 
 26
 Catlett and the RESTATEMENT make plain that this case presents the precise situation in which the loaned servant doctrine was intended to be applied. Choate was engaged in work for the benefit and at the behest of Smith at the time of Belew's accident. Lafayette had no interest in the work that Choate was performing. As the RESTATEMENT implicitly suggests, a business in Lafayette's position would be loath to let its employee gratuitously help another were it not to be held harmless from any resulting harm. As in Catlett, to the extent that Choate was being directed by anyone, it was by employees of Smith; it is true that they could not direct him, because of their lack of expertise, in the details of how to run a forklift, but they could and did direct what the forklift should carry, where it should be taken, and the route it should take to get there. As in Catlett, too, Lafayette was not involved in directing Choate's chores while on Smith property: Smith "made all decisions about all work that was to be done by [Choate] at all times." Catlett, 813 S.W.2d at 416. Lafayette employees had no input into or supervision of Choate's activities while on the Smith property.
 
 IV.
 
 27
 Choate was acting as the loaned servant of Smith for the purpose of moving the press brake, even though he remained in the general employ of Lafayette. We therefore AFFIRM.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Royal Insurance Company, the provider of workers' compensation coverage for E.G. Smith, intervened as a plaintiff. It is not, however, a party to this appeal
 
 
 [2]
 In Catlett, the employee worked at the special employer's site for an extended period of years, but the court's reasoning is not limited to such a situation. See, e.g., Kempkau v. Cathey, 277 S.W.2d 392, 395 (Tenn.1955)
 
 
 [3]
 The plaintiffs make some suggestion that the determination of whether someone is a loaned servant is, in all cases, inappropriate at the summary judgment stage, and is always a question of fact for the jury. The Tennessee courts have explicitly rejected this suggestion, finding it to be true "only when the evidence is disputed or reasonable minds might draw different inferences of fact from the undisputed evidence." Bennett v. Mid-South Terminals Corp., 660 S.W.2d 799, 802 (Tenn.App.1983) (citing Carpenter v. Hooker Chemical & Plastics Corp., 553 S.W.2d 356, 359 (Tenn.App.1977)). Such is not the case here