IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 13, 2026 Session

## KEITH KING v. DAYCO INCORPORATED

**Appeal from the Circuit Court for Shelby County**
**No. CT-0902-24      Valerie L Smith, Judge**

_____

### No. W2025-00262-COA-R3-CV

_____

Worker employed by a temporary staffing agency was assigned to one of the agency's clients and then injured while working. In suing the client for negligence, the worker relied on the contract between agency and client that provided that such assignees would not be considered employees of the client. The trial court granted summary judgment for the client, finding that the worker was a co-employee of the client and thus subject to the exclusive remedy provision of the Tennessee Workers' Compensation Law. Because the worker admitted all of the facts establishing his status as an employee of the client by failing to dispute them, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and CARMA DENNIS MCGEE, J., joined.

Andrew L. Wener, Memphis, Tennessee, for the appellant, Keith King.

Carson W. King, Nashville, Tennessee and Scott A. Frick, Memphis, Tennessee, for the appellee, Dayco Incorporated.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves the relationship between a temporary staffing agency's employee and the agency's customer. Pro-Man Staffing Solutions LLC ("Pro-Man" or "Vendor") entered into a Temporary Staffing Agreement (the "Agreement") with

Defendant/Appellee Dayco Incorporated ("Dayco" or "Customer") in August 2017. The Agreement provided, in part, as follows:

1.    SERVICES:

A.    Vendor is in the business of assigning its employees to perform services for clients, and Customer hereby engages Vendor, on a non-exclusive basis, to provide such services as may be necessary to meet Customer's staffing needs. In accordance therewith, Vendor shall recruit, interview and hire qualified candidates to provide services to Customer as needed. Candidates assigned to Customer shall herein be referred to as "Contract Employees."

B.    Vendor will invoice Customer for services provided in accordance with this Agreement on a weekly basis, and payment shall be due within thirty (30) days of the invoice receipt. At Customer's request, invoices will include either timesheets for Contract Employees and/or other relevant billing data.

C.    The services which Vendor shall render under this Agreement shall be as an independent contractor. Nothing contained in this Agreement shall be construed to create the relationship of principal and agent, or employer and employee, between Customer and Vendor, or between Customer and any Contract Employee.

. . . .

3.    BENEFITS:  Contract Employees shall not be entitled to participate in any of Customer's employee benefit plans, including any pension, 401(k), profit sharing, stock purchase, retirement, deferred compensation, welfare, insurance, disability, bonus, vacation pay, severance pay and other similar plans, programs or agreements.

. . . .

5.    SELECTION OF EMPLOYEES: . . . . Vendor shall be solely responsible for hiring and terminating its employees; however, Customer may refuse any Contract Employee in Customer's sole and absolute discretion. . . . .

6.    VENDOR DUTIES: Vendor will at all times: (a) maintain all necessary personnel and payroll records for the Contract Employees; (b) calculate their wages and withhold taxes and other government mandated

charges, if any; (c) be responsible for all tax liability as the employer of record, including but not limited to FICA, FWT, SWT, FUTA and SUTA, and remit such taxes and charges to the appropriate government entity; (d) process payroll and pay net wages and fringe benefits, if any, directly to the Contract Employee; (e) carry unemployment and workers' compensation insurance and respond to any unemployment and workers' compensation claims and proceedings involving Contract Employees; (f) will not discriminate on the basis of race, color, sex, religion, national origin, ancestry, citizenship, age, marital status, physical or mental disability, medical condition, sexual orientation, or any characteristic protected by state or federal law; and (g) will comply with applicable local, state and federal laws governing employment or conduct in the workplace.

7.      CUSTOMER DUTIES: Customer will at all times: (a) have sole responsibility for assigning Contract Employees after they are presented by Vendor; (b) train and supervise Contract Employees in the conduct of their work duties; and (c) provide a work environment free of recognized hazards.

Pro-Man employed Plaintiff/Appellant Keith King and assigned him to work at Dayco.[1]

On March 6, 2024, Mr. King filed a complaint in the Shelby County Circuit Court ("the trial court"). Therein, Mr. King alleged that he was injured while working on Dayco's premises on June 14, 2023, when he drove a forklift over plywood and the vehicle fell through the plywood. Asserting that Dayco's negligence caused his injuries, Mr. King alleged that Dayco had failed to exercise reasonable and ordinary care, keep a proper lookout, warn him of hazards or potential hazards, and maintain the premises. He further alleged that Dayco had acted willfully, wantonly, and recklessly under the circumstances. The complaint sought $150,000.00 in compensatory damages.

Dayco moved to dismiss the complaint. It argued that Mr. King's alleged injury arose out of and in the course and scope of his employment, such that his negligence claim was barred by the exclusive remedy provision of the Tennessee Workers' Compensation Law (the "TWCL"). *See* Tenn. Code Ann. § 50-6-108(a) ("The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, . . . shall exclude all other rights and remedies of the employee, . . . at common law or otherwise, on account of the injury or death.").

Mr. King filed a response opposing the motion, arguing that Dayco lacked sufficient control over his work to be considered his employer entitled to immunity from the negligence claim under the TWCL. Mr. King also argued that Dayco had not provided him with any workers' compensation benefits under the TWCL, despite its assertion that the

---

[1] At no point have these facts or the language of the Agreement been disputed by the parties.

TWCL was the sole source of relief available to him. In an affidavit filed April 30, 2024, Mr. King swore, inter alia, that Dayco "could not control all of [his] activities on the date of the subject incident" and "could not require [his] participation in the investigation of the subject incident."

By order of May 30, 2024, the trial court denied Dayco's motion to dismiss. The trial court determined that "further development regarding disputed facts/issues presented was needed" and that "the issues presented appeared more amenable to a potential Motion for Summary Judgment should [Dayco] decide to pursue same."

Dayco answered Mr. King's complaint on June 6, 2024. It raised multiple affirmative defenses, including the failure to state a claim, the application of the TWCL, the failure to mitigate damages, and the assumption of risk. Dayco further asserted that any relief Mr. King received should be reduced by the workers' compensation, social security, or insurance benefits he had already received.

On August 21, 2024, Dayco filed motion for summary judgment. It explained that under Tennessee law, a person employed by a temporary staffing agency and assigned to work for the agency's client would be considered a per se employee of the client for workers' compensation purposes. Thus, Dayco again argued that Mr. King's negligence claim was barred by the exclusive remedy provision of the TWCL.[2] It highlighted that Mr. King had actually filed a successful workers' compensation claim against Pro-Man.

On the same day, Mr. King filed his own motion for partial summary judgment on the issue of his not being an employee of Dayco or otherwise barred from relief under the TWCL. He relied on paragraph 1(C) of the Agreement, which provided that no employer-employee relationship would exist between himself and Dayco. Mr. King argued that the Agreement unambiguously set out the intentions of Pro-Man and Dayco regarding his relationship with Dayco. He argued that Dayco had not provided anything to justify ignoring the plain language of the Agreement.

In his August 21, 2024 response to Dayco's statement of undisputed material facts in support of its motion for summary judgment, Mr. King agreed to certain facts: (1) under the Agreement, "Dayco had the right to refuse to allow any employee of Pro-Man to work for Dayco, at Dayco's sole and absolute discretion"; (2) on the date of injury, Mr. King "was performing services on behalf of Pro-Man for Dayco"; and (3) Mr. King was "working in Dayco's facility using Dayco's equipment." Mr. King disputed the statement that he "worked for Dayco at the direction of a Dayco manager," stating instead that "[he]

---

[2] Dayco included Mr. King's June 2024 response to its requests for admissions with the motion. Therein, Mr. King admitted that "[his] manager at Dayco told [him] where to work within Dayco's facilities each day." Also as part of this response, Mr. King denied that "Dayco controlled [his] work schedule while [he was] assigned to work at its facilities" based on the indefiniteness of the word "controlled."

- 4 -

was assigned to work at Dayco by Pro-Man. Therefore, [he] worked at Dayco at the direction of Pro-Man. While [he] worked at Dayco, [he] provided tasks for Dayco."[3]

Along with its November 1, 2024 response to Mr. King's statement of material facts in support of his own motion, Dayco also submitted several additional allegedly undisputed material facts. These alleged facts related to the scope and course of Mr. King's work while assigned to Dayco:

1.      Plaintiff Keith King worked for Dayco as a forklift operator. . . . .
2.      Lamonda Topps, a full-time Dayco employee, served as Mr. King's supervisor during his employment at Dayco. Mr. King also reported to Manager Derek Spates, another full-time Dayco employee.
3.      Each day, Mr. King was assigned specific trailers to inspect and remove containers from with the forklift, either by Ms. Topps or his Lead, Dana Hubbard.
        . . . .
5.      During the time that Mr. King worked at Dayco, he was required to report to work Monday through Friday from 6 a.m. through 2:30 p.m., and was required to clock in and clock out on a daily basis. Mr. King would have been expected to work overtime hours had overtime hours been necessary and had either Ms. Topps or another Dayco manager instructed him to do so. Mr. King was expected to work a minimum of forty hours per week for Dayco.
6.      During Mr. King's first week on the job, Ms. Topps personally instructed Mr. Hubbard to train Mr. King, and personally observed Mr. Hubbard providing this training. . . . .
7.      Mr. King worked in tandem with other Dayco employees, given that he was supervised by both Ms. Topps and Manager Derek Spates, and worked together with Mr. Hubbard to complete his job duties at Dayco.
8.      Other full-time Dayco employees would have been required to perform Mr. King's duties had Mr. King not been at work. For example, during his employment at Dayco, when Mr. King was out for any reason, Mr. Hubbard was required to assume Mr. King's duties.
        . . . .
12.     Mr. King had no authority to hire any of his own workers or helpers to assist him with his job duties at Dayco, nor did Mr. King ever hire any of his own workers or helpers to assist him.
13.     Mr. King was not required to provide any tools or equipment to perform his duties at Dayco, as Dayco provided all necessary tools and equipment for Mr. King to perform his job duties.

_____

[3] No record citation was included with Mr. King's response to this alleged fact.

(Record citations omitted). Mr. King failed to respond to any of these additional facts.

The trial court adjudicated the cross-motions for summary judgment by order of February 6, 2025. The trial court found that there was "an implied contract with Dayco, the work performed was essentially that of Dayco, and Dayco controlled the details of [Mr. King's] work." Pursuant to the "loaned servant doctrine," the trial court determined that "that the undisputed facts in this matter create an implied employment contract between [Mr. King] and Dayco." Thus, the TWCL was the exclusive remedy available to Mr. King for his workplace injury, barring his negligence claim. The trial court also found that Mr. King had "failed to correctly cite to the record" to support his position, such that it had no obligation to consider his argument. The trial court denied Mr. King's motion for partial summary judgment, granted Dayco's motion for summary judgment, and dismissed the case with prejudice. From this order, Mr. King now appeals.

## II. STANDARD OF REVIEW

Mr. King raises one issue on appeal: "Whether the Trial Court erred in granting [Dayco's] Motion for Summary Judgment in finding that [Mr. King] was an Employee of [Dayco]." We review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). A party is entitled to summary judgment if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Brooks Cotton Co. v. Williams*, 381 S.W.3d 414, 418–19 (Tenn. Ct. App. 2012) (quoting *Landry v. S. Cumberland Amoco*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010)).

## III. ANALYSIS

### A.

Before we address the merits of Mr. King's arguments, we feel it necessary to address certain deficiencies in his briefing. First, other than two references to the Agreement, which was appended thereto, Mr. King's brief does not include any citations to the record. This simply does not comply with appellate briefing requirements. *See* Tenn. R. App. P. 27(a) (requiring "appropriate references to the record" in both the statement of facts and argument sections); Tenn. R. Ct. App. 6(b) (providing that no "complaint of or reliance upon action by the trial court" or "assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record" where the action or support for the fact is recorded); *see also Mabry v. Mabry*, No. 03A01-

9106CH207, 1992 WL 24995, at *1 (Tenn. Ct. App. Feb. 14, 1992) ("It is not incumbent upon this Court to sift through the record in order to find proof to substantiate the factual allegations of the parties."). And although Mr. King's brief repeats verbatim the same legal authority included in his response to Dayco's motion to dismiss, his response to Dayco's motion for summary judgment and his own motion for partial summary judgment, it also replicates those earlier filings' failure to apply that authority to the facts in the instant case. *See Tennesseans for Sensible Election Ls. v. Slatery*, No. M2020-01292-COA-R3-CV, 2021 WL 4621249, at *6 (Tenn. Ct. App. Oct. 7, 2021) (describing the "explanation of how the cited legal principles apply to the facts in this case" as a "necessary" part of the appellate brief). Such inadequate briefing would generally result in a waiver of all appellate issues. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). Based on the limited legal issues presented, however, and because the deficiencies in Mr. King's brief do not "prejudice the opposing party, force the court to act as a party's counsel, or otherwise significantly frustrate the court's ability to decide an appeal," we do not find it necessary to dismiss the appeal. *DiNovo v. Binkley*, 706 S.W.3d 334, 336 (Tenn. 2025) (per curiam). Litigants are cautioned that we may not be so forgiving of such issues in the future.

Dayco also argues that Mr. King has waived any consideration of the factors included in the TWCL's definition of "employee" by failing to raise the argument in the trial court. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) ("Issues not raised in the trial court cannot be raised for the first time on appeal."). But from our review, Mr. King did address the application of the factors in both his opposition to Dayco's motion to dismiss and in his summary judgment filings. To the extent that Dayco takes umbrage with application of the factors not being expressly included in Mr. King's statement of the issues, we find that the argument is clearly encompassed by the issue as stated. *See Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024) (per curiam) ("[W]hen the arguments set forth in an appellate brief fall within the scope of the stated issues, and the issues and argument taken together clearly present the grounds for appellate relief, the reviewing court should review the substantive issues.").

**B.**

We look now to the merits of the appeal. The question before us is whether Mr. King's negligence claim is precluded by the exclusive remedy provision of the TWCL. In turn, that question involves determining whether an employer-employee relationship existed between Dayco and Mr. King at the time of his injury. Answering these questions requires an understanding of the TWCL and its purpose.

Our supreme court has explained that the TWCL is "a comprehensive scheme that reflects a compromise between the interests of employers and employees. 'It provides an expeditious and certain recovery for the employee while limiting the amount of liability to which the employer is exposed.'" *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 954 (Tenn. 1985) (first citing *W.S. Dickey Mfg. Co. v. Moore*, 208 Tenn. 576, 347

S.W.2d 493 (1961); and then quoting ***Clanton v. Cain-Sloan Co.***, 677 S.W.2d 441, 443 (Tenn. 1984)). As part of the TWCL's "mutual renunciation of common law rights and defenses[,]" workers' compensation benefits are usually an employee's exclusive remedy against his or her employer. ***Coblentz v. Tractor Supply Co.***, No. M2023-00249-SC-R11-CV, --- S.W.3d ---, 2025 WL 3704465, at *4 (Tenn. Dec. 22, 2025) (quoting Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L. Rev. 405, 406 (1988)). This balance is codified in the TWCL's exclusive remedy provision. *See* Tenn. Code Ann. § 50-6-108(a) ("The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, . . . shall exclude all other rights and remedies of the employee[.]").

In most circumstances, courts determine whether an employer-employee relationship exists by considering the following factors:

> (*a*) The right to control the conduct of the work;
> (*b*) The right of termination;
> (*c*) The method of payment;
> (*d*) The freedom to select and hire helpers;
> (*e*) The furnishing of tools and equipment;
> (*f*) Self-scheduling of working hours; and
> (*g*) The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(10)(D)(i). While "there is no fixed and rigid formula" for delineating employees covered by the TWCL from independent contractors who are not, it is well established that the right to control and the right to terminate are "controlling considerations[.]" ***Wooten Transps., Inc. v. Hunter***, 535 S.W.2d 858, 860 (Tenn. 1976) (citing ***Brademeyer v. Chickasaw Bldg. Co.***, 190 Tenn. 239, 229 S.W.2d 323 (1950); ***Curtis v. Hamilton Block Co.***, 225 Tenn. 275, 466 S.W.2d 220 (1971)).

But Tennessee courts have also determined that a worker "should not be deprived of benefits for injuries sustained while performing work on the premises of a large industry merely because he is on the payroll of a smaller concern which has loaned his services to the large industry." ***Carpenter v. Hooker Chem. & Plastics Corp.***, 553 S.W.2d 356, 360 (Tenn. Ct. App. 1977). Thus, "[s]ometimes an employee may be employed by two or more employers" for workers' compensation purposes. King, *supra*, at 433. Under this "borrowed servant" or "loaned employee" doctrine, "if an employer 'loans' an employee to a 'special employer,' the special employer may become liable for workers' compensation benefits in the event the loaned employee is injured on the job." ***Stephens v. Home Depot U.S.A., Inc.***, 529 S.W.3d 63, 75 (Tenn. Ct. App. 2016) (quoting ***Blackwell v. Comanche Constr., Inc.***, No. W2012-01309-COA-R9-CV, 2013 WL 1557599, at *5 (Tenn. Ct. App. Apr. 15, 2013)). A three-prong test is used to determine the special employer's liability for a loaned employee's workers' compensation benefits:

(a) The employee has made a contract of hire, express or implied, with the special employer;

(b) The work being done is essentially that of the special employer; and

(c) The special employer has the right to control the details of the work.

***Bennett v. Mid-S. Terminals Corp.***, 660 S.W.2d 799, 801 (Tenn. Ct. App. 1983) (quoting ***Winchester v. Seay***, 219 Tenn. 321, 409 S.W.2d 378, 381 (1966)). As a special employer is subject to liability under the TWCL, so too is it entitled to the protection of the exclusive remedy provision. ***Stephens***, 529 S.W.3d at 75 (citing ***Carpenter***, 553 S.W.3d at 360). Here, after reviewing the undisputed facts, the trial court concluded that Mr. King was an employee of both Pro-Man and Dayco at the time of his injury, such that his negligence claim against Dayco was barred by the exclusive remedy provision of the TWCL.

In opposing the trial court's judgment, Mr. King first argues that the trial court erred in looking beyond the plain terms of the Agreement, which he explains "unambiguously" disavows any employer-employee relationship between himself and Dayco.[4] Even if we look past the fact that Mr. King was not himself a signatory to the Agreement, Tennessee law is clear that "provisions in contracts between the parties do not control on the question of whether the workers comp statute applies, and where the facts are basically undisputed, it is a question of law for the courts." ***Harness v. Bechtel Jacobs Co., LLC***, No. E2006-00194-COA-R3-CV, 2007 WL 10447, at *3 (Tenn. Ct. App. Jan. 3, 2007) (citing ***Stratton***, 695 S.W.2d at 953 (stating that the "parties cannot by contract take this responsibility from the court")); *see also* Tenn. Code Ann. § 50-6-114(a) ("No contract or agreement, written or implied, . . . shall in any manner operate to relieve any employer, in whole or in part, of any obligation created by this chapter[.]"). A contract purporting to establish a worker as an independent contractor is of no effect in the face of circumstances indicating the worker is an employee. *See, e.g.*, ***Boruff v. CNA Ins. Co.***, 795 S.W.2d 125, 126 (Tenn. 1990); ***Lindsey v. Trinity Commc'ns, Inc.***, 275 S.W.3d 411, 420 (Tenn. 2009); ***Fayette Janitorial Servs. v. Kellogg USA, Inc.***, No. W2011-01759-COA-R3-CV, 2013 WL 428647, at *5 (Tenn. Ct. App. Feb. 4, 2013) ("We first note that the designation given by the parties in their contract does not dictate the applicability of the Workers' Compensation Law."). Instead, we must consider whether the undisputed facts establish Mr. King as Dayco's loaned servant using the three-prong test.

Of course, by nature of the Agreement, there is no express contract of hire between the parties. But well-established precedent holds that "[w]hen a temporary worker accepts employment and enters into an employment agreement with a temporary agency, he or she

---

[4] Again, paragraph 1(C) of the Agreement states that: "The services which Vendor shall render under this Agreement shall be as an independent contractor. Nothing contained in this Agreement shall be construed to create the relationship of principal and agent, or employer and employee, between Customer and Vendor, or between Customer and any Contract Employee."

'necessarily consents to work for the clients of the agency' and enters into 'an implied contract with a special employer.'" ***Stephens***, 529 S.W.3d at 75 (quoting ***Tedder v. Union Planters Corp.***, No. W1999-01971-COA-R3-CV, 2001 WL 589139, at *2 (Tenn. Ct. App. May 29, 2001)). As such, we have consistently found that "an employee of a temporary manpower service is considered also to be an employee of the company to which the employee is assigned, for workers' compensation purposes." ***Abbott v. Klote Int'l Corp.***, No. 03A01-9810-CV-00328, 1999 WL 172646, at *3 (Tenn. Ct. App. Mar. 24, 1999) (finding implied contract for hire between temporary employment agency employee and the agency's client, such that client was a special employer); *see also, e.g.*, ***Bennett***, 660 S.W.2d at 801–02 (finding the loaned servant doctrine applicable to an employee of a supplier of temporary manpower); ***Tedder***, 2001 WL 589139, at *2 (finding that an employee of a temporary employment agency was a co-employee of the bank where she was assigned to work, pursuant to the loaned servant doctrine). Thus, this factor clearly supports the finding that Mr. King was a borrowed employee.

Nor is there any serious question regarding the other two factors. In his August 2024 response to Dayco's statement of undisputed material facts, Mr. King explicitly did not dispute that Dayco had the "sole and absolute discretion" to prohibit him from working at Dayco, that he was "performing services . . . for Dayco[,]"and that he was "working in Dayco's facility using Dayco's equipment." Dayco's November 2024 statement of additional undisputed material facts offered an expanded view of the circumstances surrounding Mr. King's work. Therein, Dayco set out that Mr. King's work schedule was prescribed by Dayco, and while assigned to Dayco, Mr. King was using Dayco's tools and equipment, supervised by two full-time Dayco employees, managed by another full-time Dayco employee, and unable to hire any assistants. The record contains no response to these additional facts from Mr. King.[5] It is well established that a moving party's undisputed facts may be considered admitted when the non-moving party fails to respond. *E.g.*, ***Holland v. City of Memphis***, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) ("[M]aterial facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party."); ***Simmons v. Harris***, No. M2000-00227-COA-R3-CV, 2000 WL 1586451, at *3 (Tenn. Ct. App. Oct. 25, 2000) (holding that as consequence of non-moving party's failure to comply with Rule 56.03, the moving party's alleged facts were deemed admitted); ***Brennan v. Goble***, No. E2020-00671-COA-R3-CV, 2021 WL 2156443, at *7 (Tenn. Ct. App. May 27, 2021) ("Because Plaintiff did not respond to Defendant's statement of material facts, we determine that the Trial Court did not err by ruling that Defendant's statement of material facts was deemed admitted and in relying on those facts to conclude that Defendant had negated an essential

---

[5] And indeed, Mr. King offers no rebuttal to the trial court's finding that he had failed to properly support his position via his non-compliance with Rule 56.03. *See* Tenn. R. Civ. P. 56.03 ("Any party opposing the motion for summary judgment *must*, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed." (emphasis added)).

- 10 -

element of Plaintiff's claim."). Moreover, in his appellate brief, Mr. King expressly accepts that factors (a) (the "right to control the conduct of the work"), (d) (the "freedom to select and hire helpers"), (e) (the "furnishing of tools and equipment"), and (f) (the "[s]elf scheduling of working hours") from section 50-6-102(10)(D)(i) "appear satisfied." From all of these admissions, we find ample support for the conclusion that the work Mr. King was performing was "essentially that" of Dayco and Dayco had the right to control the details of this work.

Accordingly, the undisputed facts in this case establish that Mr. King was a borrowed employee co-employed by both Pro-Man and Dayco at the time of his injury in June 2023. Because special employers are protected by the TWCL's exclusive remedy provision, no reasonable fact-finder could reach a conclusion other than that Mr. King's negligence claim is thereby barred. We therefore affirm the trial court's grant of summary judgment to Dayco.

## IV. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Keith King, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 11 -